**Dorothy E. THOMAS, a/k/a Dorothy C. Willis, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 80–1404.**

District of Columbia Court of Appeals.

Submitted Jan. 19, 1982.

Decided April 12, 1982.

Robert H. Haas, Washington, D. C., appointed by the court, was on the brief for appellant.

Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time of submission, John A. Terry, Michael W. Farrell, Cary M. Feldman, and J. Edward Agee, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before FERREN and BELSON, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Appellant was convicted by a jury of second-degree murder while armed in violation of D.C.Code 1981, §§ 22–2403, –3202, and sentenced to five to twenty years imprisonment. In this court appellant argues that the government violated Super.Ct. Cr.R. 16(a)(1)(A)[1] by failing to disclose the

---

1. The Rule provides:

Upon request of a defendant the prosecutor shall permit the defendant to inspect and copy or photograph:

"substance" of a statement made by her to the police before introducing it for impeachment purposes and that the trial court erred in not striking the testimony in question or granting her motion for a mistrial. Having found no reversible error, we affirm.

At a discovery conference held on June 26, 1980, the government informed defense counsel of two statements made by appellant to the police. The first was "that the decedent had attacked her and that she had grabbed or attempted to grab his arm." The second statement was "that [appellant] had stabbed the decedent after he had 'advanced on her'."[2] On the day appellant's trial began, the government informed defense counsel of a third statement. Appellant had told police she was not in possession of the knife used to inflict the fatal injury. At trial, appellant argued self-defense. She testified that she stabbed the decedent after he grabbed her around the neck and strangled her. On cross-examination, appellant was asked if she had ever given any other reason for stabbing the decedent. Appellant answered that she had not. The following colloquy ensued:

Q. Have you ever told anybody that you stabbed him to teach him a lesson?

A. No, no, no.

Q. Teach him a lesson not to approach older women?

A. No, no. That boy has never approached me in any other way other than that night he was trying to get my pocketbook out and grabbed me, because he had been worrying me about five dollars when I got my check cashed, no. That boy has never tried to approach me like that.

Appellant moved for a mistrial or in the alternative to strike the testimony, arguing that she had been prejudiced by the government's failure to disclose this fourth statement. The government sought to have the officer, to whom the statement was made, testify in rebuttal. After a lengthy voir dire, the trial court denied appellant's motions. In addition, the court barred the government's rebuttal witness from testifying about the statement in question.[3]

■ Rule 16 requires that the government disclose all written or recorded statements and the "substance" of oral remarks made by an accused in response to police interrogation. See Rosser v. United States, D.C.App., 381 A.2d 598 (1977). The rule recognizes that less precision is possible with statements which have not been reduced to writing. Nevertheless, a defendant's oral statements should be disclosed in enough detail to minimize the undesirable effects of surprise at trial and otherwise contribute to the fair and efficient administration of criminal justice. Lee v. United States, D.C.App., 385 A.2d 159, 163 (1978).

■ The prosecutor's communication that appellant stated she had stabbed decedent "after he had 'advanced on her'" does not include the substance of appellant's remark that she stabbed decedent "to teach him a lesson." The nature of the two statements is sufficiently different to warrant independent disclosure. While both statements suggest that the decedent made sexual advances on appellant, they might have affected defendant's self-defense claim differently. We do not find that the government acted in bad faith; nonetheless, it did fail to communicate the "substance" of appellant's oral statement as required by Rule 16.

---

... the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent ....

2. This language is contained in a letter sent by defense counsel to the United States Attorney who conducted the discovery conference and reflects defense counsel's understanding of appellant's statements to the police. At trial, the

government acknowledged the accuracy of this letter.

3. Appellant's counsel also objected to the prosecutor's questioning his client regarding her alleged statement that the deceased wanted to "f___" her because no statement using this word was disclosed to him. We agree with the trial court, and appellant's trial counsel conceded, that the substance of this statement was revealed when the prosecutor disclosed that appellant had "advanced on her."

It remains for us to consider whether the error warrants reversal. The applicable standard as set forth in *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), is:

> [Whether we can say] with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.

See *Smith v. United States*, D.C.App., 392 A.2d 990, 993 (1978); *Harris v. United States*, D.C.App., 366 A.2d 461, 464 n.8 (1976). "The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error." *Smith v. United States, supra* at 993–94, quoting *Smith v. United States*, D.C.App., 315 A.2d 163, 166, *cert. denied sub nom. Jeffries v. United States*, 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974).

In the case at bar, the strength of the government's evidence was overwhelming. Appellant, decedent, and four others, had been drinking together at an apartment on Second Street, S.E. After an argument with one of the other individuals, the decedent left the apartment, closing the door as he exited. Two of the persons present at the apartment testified that appellant, armed with a knife, went to the door as decedent was leaving, pulled it open, stabbed decedent and closed the door. Appellant testified that in the hallway outside the apartment, the decedent had grabbed her and that in an effort to free herself, she had stabbed him. Appellant testified that she feared the decedent would throw her down and take her pocketbook. There was no evidence, other than appellant's testimony, introduced to support appellant's claim that she was attacked by the decedent and no indication that appellant feared for her life during the alleged attack. Both eyewitnesses testified that appellant turned after stabbing decedent and said, "I'll stab you, too, m——f———." Another person who had been at the apartment with appellant and decedent earlier that evening testified that he had seen appellant shortly after the stabbing and she had said, "Well, I killed that red m——f———."

In evaluating a claim of self-defense, the jury must weigh the amount of force used by the defendant against the severity of the harm which the defendant seeks to avoid. Deadly force, that which is likely to cause death or great bodily harm, is justified only if the defendant reasonably believes that the assailant is about to inflict death or serious bodily harm. Here, there was little evidence that appellant's actions were reasonable under the circumstances. Furthermore, the trial court did mitigate the error by prohibiting the government's rebuttal witness from testifying about the statement in question.

Given the strength of the government's evidence, the lack of evidence to support appellant's self-defense theory, and the steps taken by the trial court to mitigate the error, we find that the jury's verdict was not substantially swayed by the error. Accordingly, appellant's conviction is

*Affirmed.*