William T. JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 80–950.

District of Columbia Court of Appeals.

Argued June 30, 1982.

Decided Nov. 10, 1982.

James H. McComas, Public Defender Service, Washington, D.C., with whom William J. Mertens, Public Defender Service, Washington, D.C., was on the brief, for appellant. Silas J. Wasserstrom, Public Defender Service, Washington, D.C., also entered an appearance for appellant.

William J. Birney, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed and the case was argued, John R. Fisher and David M. Stanley, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN, FERREN, and PRYOR, Associate Judges.

PER CURIAM:

Appellant, who was charged with first-degree murder while armed, D.C.Code 1981, §§ 22–2401, –3202, and carrying a pistol without a license, *id.*, § 22–3204, was convicted, after a jury trial, of a lesser included offense, voluntary manslaughter while armed, and the weapons offense. He seeks to overturn these convictions on the ground that the trial court improperly excluded evidence of the decedent's prior violent acts which was relevant to his theory of self-de-

fense.[1] Upon review of the matter, we find that the argument has some merit; we therefore reverse the conviction for manslaughter, but affirm the judgment for carrying a pistol without a license.

I

Appellant was accused of shooting Amiel Johnson in October of 1978 during an affray in an alley in Southwest Washington. Several witnesses testified that the two men were initially engaged in a casual sparring match when the deceased, with sudden and unusual fury, punched appellant in the face, causing him to exclaim, "I can't see! I can't see!" Appellant walked to a nearby vehicle and removed a gun from a coat located therein. He then walked back toward the decedent and shot him three times.[2] Appellant's primary defense was self-defense; in support of this claim—in particular the element that the deceased was the aggressor—he proffered, at trial, five strands of evidence regarding the deceased's character and reputation for violence.[3]

The proffered items of evidence consisted of (1) testimony of a 1972 robbery victim, as well as that of the investigating officer, who discovered the complainant staggering out of an alley bloody and beaten, and a certified copy of the conviction of the deceased; (2) testimony of a woman alleged to have been raped by the deceased three months before the shooting and a copy of the pending indictment; (3) a Department of Corrections memorandum indicating that the deceased, while a resident in a halfway house in 1977, had made sexual advances to a female inmate, and when advised of possible discipline, "threatened to tear the center apart...;" (4) a psychiatric worksheet from the D.C. General Hospital, relating back to 1971, to the effect that the deceased had struck a fellow patient while engaged in a drug detoxification program; and (5) lastly, appellant's counsel offered a witness to testify generally that the deceased had a reputation for violence in the community.

Except for a stipulation which reflected the decedent's conviction for robbery in 1972, the court excluded the remainder of the enumerated evidence offered on the question. Asserting that the court's rulings served to emasculate his defense, appellant now seeks reversal.

II

■ We begin with the basic premise that a trial judge is entrusted with broad discretion to determine the substance, form, and quantum of evidence which is to be presented to a jury. See *Punch v. United States,* D.C.App., 377 A.2d 1353, 1358 (1977); *Hardy v. United States,* 118 U.S. App. 253, 254, 335 F.2d 288, 289 (1964). This is often a multi-faceted determination, particularly in instances where the evidence is directed to a secondary or collateral question. In discharging this responsibility, the trial judge must first consider whether the evidence violates any of the governing rules of evidence. The court must also determine whether the evidence is relevant to a material issue and, when balanced against competing interests, is not likely to inflame or unduly prejudice the jury. *Brooks v. United States,* D.C.App., 396 A.2d 200, 206 (1978); *Wooten v. United States,* D.C.App., 285 A.2d 308 (1971).

■ It is clear that we should not simply substitute our judgment for that of the trial judge. Rather, our scope of review is limited to whether the trial court has abused its discretion. *Punch v. United*

---

1. Appellant also challenges the prosecution's cross-examination and closing argument with respect to his pre-arrest silence. Given our disposition of this case, we do not reach this issue of constitutional import and the implication of *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).

2. Although several eyewitnesses testified, it appears that they had been drinking during the altercation and were unable to describe it in detail.

3. "Such evidence may be relevant to the two basic self-defense issues: (1) the objective question who was the aggressor, and (2) the subjective evaluation of the defendant's state of mind ...." *Johns v. United States,* D.C. App., 434 A.2d 463, 469 (1981).

*States, supra; Wooten v. United States, supra; see also Johnson v. United States,* D.C.App., 398 A.2d 354 (1979).

Since in this jurisdiction an accused claiming self-defense in a homicide prosecution may attempt to show that the decedent was the aggressor by showing that the dead person was a bellicose and violent individual, evidence in that regard is deemed relevant. *United States v. Akers,* D.C.App., 374 A.2d 874, 877 (1977); *Hurt v. United States,* D.C.App., 337 A.2d 215, 217 (1975); *King v. United States,* D.C.App., 177 A.2d 912 (1962); *see also Johns v. United States,* D.C.App., 434 A.2d 463 (1981). We note that appellant relied upon documentary evidence, viewing them as business records, to prove a "sexual advance" in 1977, and assaultive behavior at D.C. General Hospital in 1971. Given the form of evidence, a court could reasonably conclude that the former was equivocal in nature, and the latter was remote as to time. The probative worth of both could be far outweighed by their potential for confusion and additional queries without answer. Understandably, the court had similar concerns regarding the accusations of rape. The matter was unadjudicated and still pending in the court system. Faced with this problem, the trial judge chose to exclude the matter entirely. She also decided to preclude evidence from the witness who would have given general testimony as to decedent's reputation.[4] It is the cumulative effect of these rulings, and in particular the latter two, which we find to be reversible error.

We recognize that a prolonged exposition of the circumstances surrounding the alleged rape, with lengthy rebuttal, could well be misconstrued as a prosecution unto itself. There is the possibility that the jury could be misled and confused. The form of the evidence could be highly inflammatory. Nonetheless, evidence bearing on a violent incident, which occurred approximately three months before the shooting, was pro-

bative and relevant evidence on the aggressor issue in this case.

The same is true with regard to the reputation witness.

To meet this dilemma, the court could, in lieu of excluding the evidence entirely, simply abbreviate or restrict the form and quantity of the testimony to be allowed. Under appropriate instruction the jury would be able to evaluate the limited evidentiary purpose for which the evidence was offered without undue digression from the events surrounding the alleged shooting.

We take pains to emphasize that a trial judge is not obliged to accept all evidence in whatever form it is offered for presentation to a jury. Rather, the court may edit the evidence so as to accomplish its purpose without distraction from the primary focus of the trial. However, upon review of the present record we are constrained to hold that appellant was denied the use of considerable evidence which went to the heart of his defense. The effect of the total exclusion of such evidence was, we conclude, an abuse of the court's discretion requiring reversal of the manslaughter conviction.

The conviction for carrying a pistol without a license is affirmed. The trial court instructed the jurors fully on the offense and they found that appellant, who was not licensed to carry a weapon, had the gun in his possession before the events that gave rise to the need for its use. "A defendant in a [weapons] prosecution ... cannot claim self-defense to justify possession of the weapon before its use in self-defense." *McBride v. United States,* D.C.App., 441 A.2d 644, 650 n. 11 (1982).

*Affirmed in part; reversed in part.*

---

4. The court reasoned that if appellant were permitted to show the general reputation of the deceased, then the prosecution, in turn, could elicit similar testimony to appellant. *Contra Johns v. United States, supra* note 3.