Isaac FREDERICK, Appellant,

v.

UNITED STATES, Appellee.

No. 82–1156.

District of Columbia Court of Appeals.

Argued Oct. 27, 1983.

Decided Feb. 23, 1984.

Thomas K. Clancy, Washington, D.C., appointed by the court, for appellant. David A. Levitt, Washington, D.C., was on the brief, for appellant.

Craig N. Moore, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed and the case was argued, and Michael W. Farrell, John R. Fisher, and Susan R. Holmes, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN, FERREN and PRYOR, Associate Judges.

PRYOR, Associate Judge:

■ Appellant's first trial on four counts of armed robbery, D.C.Code §§ 22–2901, –3202 (1981), ended in a mistrial. The jury found him guilty as charged after a second trial on two of the counts. He asserts that the prosecutor's improper impeachment of his alibi witnesses so tainted the verdict as to require reversal.[1] We affirm.

1. Appellant further maintains that reversible error attended the prosecutor's characteriza- tion of the alibi testimony as "patently incredible." He also contends that, during trial, the

The testimony adduced at trial revealed that Marion Fleichman and Michael Taylor were working at a gas station in Northwest Washington early in the evening of January 6, 1981. Fleichman, seated at a desk in the small, well-lighted station office, observed a man walk toward the station, enter the office and ask for a can of transmission fluid. The two spoke for "two to three minutes" and then went outside to a rack where the fluid was stored. While Fleichman selected the proper transmission fluid, the man remarked that he also needed some brake fluid and asked if he could use the rest room. Fleichman turned toward the man and told him that he could use the rest room inside the office. A few minutes later, Fleichman reentered the office to retrieve the can of brake fluid from a shelf at the back of the office. As he turned around, the man, who was standing "right behind" him holding a pistol, announced that "this is a stick-up." Moments later, Michael Taylor came out of the office rest room and bumped into the man standing in front of Fleichman. Taylor looked at the man's face and then "looked down and saw the gun" as the man warned him not to "go in [his] boots." Taylor, who once carried a pistol while working at another gas station, put his hands up and backed away from the gunman. Holding the two station workers at bay, the gunman ordered them to the back of the adjoining garage where he told them to "give up [their] money." He then reached into Fleichman's pants pocket and removed approximately $100.00 as Taylor handed him two wallets. The gunman took the money from the wallets and then reached into Taylor's pockets and removed some change. The gunman then locked the two workers inside the garage and made

good his escape. Taylor called the station owner's wife from a pay phone inside the garage; she, in turn, called the police who later released Fleichman and Taylor from the garage when they arrived at the scene.

A detective assigned to the case showed Taylor a series of ten photographs about a week after the robbery. Taylor selected appellant's photograph, stating he was certain the man in the photograph was the robber. Taylor attended a subsequent lineup and was firmly explicit in his identification of appellant as the robber. Fleichman, who was shown a photograph of the lineup, positively identified appellant as the robber.

 Appellant's alibi defense was presented through the same witnesses at both trials. He argues that the prosecutor misconstrued the prior testimony of one of these witnesses, making it appear as though the witness had changed his testimony at the second trial.[2] One witness, David Vanerson, testified that he first learned of the robbery shortly after appellant was apprehended. The prosecutor challenged that testimony several times by asking whether Vanerson had not in fact previously testified that "the first time [he] learned anything about [the robbery] was two weeks before the first trial in October, 1981." Vanerson answered that it was "possible" he had so testified and attributed the apparent inconsistency to "mistake" and "confus[ion]" at the first trial. Defense counsel objected and urged the prosecutor to impeach Vanerson with, rather than simply question him about, his prior testimony. The objection was overruled, the court observing that the witness had admitted to the nature of, and change from, his prior testimony. However, Vanerson's only testi-

---

prosecutor improperly referred to the date of appellant's arrest, a matter not in evidence. Neither contention has merit.

2. During her cross-examination of a second alibi witness, the prosecutor asked whether he had testified that he immediately remembered what he was doing on January 6, 1981. The witness had not so testified and indicated as much in his response to the question. Appellant contends that the prosecutor's questioning

unfairly cast doubt on his alibi defense. However, defense counsel did not object to this question, and we may reverse only for plain error. The question was not sufficient to discredit the witness' testimony and was not "so clearly prejudicial [to appellant's] substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States,* 362 A.2d 706, 709 (D.C.App.1976) (en banc).

mony on that point at the first trial was that he recalled the events of January 6, 1981 (the day of the robbery) because he had discussed them shortly before the first trial. Despite the prosecutor's suggestion, Vanerson never testified that he first learned of the robbery in October.

This impeachment procedure was lengthy, disorganized, and not in keeping with the usual practice which is to confront the witness by accurately recounting the substance of his prior testimony. *Weaver v. Irani,* 222 A.2d 846, 848 (D.C.App.1966); *United States v. Smith,* 172 U.S.App.D.C. 297, 521 F.2d 957 (1975) (text of prior inconsistent statement in police report shown to witness); *Osborne v. McEwan,* 194 F.Supp. 117, 118 (D.D.C.1961) ("[t]he interrogation on cross examination must identify the specific statement and indicate its contents ...."); T. MAUET, FUNDAMENTALS OF TRIAL TECHNIQUE 272 (1980) ("[i]t is improper to summarize or paraphrase the [prior] testimony").

Given the circumstances of this case, we conclude that the prosecutor's efforts to impeach, though improperly implemented, do not warrant reversal. The government's case was strong. Fleichman and Taylor were only a few feet from the gunman during the entire time they were confronted by him. The office and garage were bathed in the glow of bright florescent lighting, and both men were able to see the gunman's face clearly. Furthermore, Taylor, who observed the gunman throughout the incident, testified that he was familiar with the gunman because he had previously "seen him in the Southeast area." *Jones v. United States,* 119 U.S.App.D.C. 213, 214 n. 3, 388 F.2d 553, 554 n. 3 (1964) ("whether improper conduct of Government counsel amounts to prejudicial error depends, in

good part, on the relative strength of the Government's evidence of guilt").

Conversely, Vanerson's testimony was of minimal effect. He claimed to have learned of the robbery in a conversation with appellant a few days after his arrest. He further testified that although appellant had not told him the day or date of the robbery, he "guessed" the crime occurred on "Monday [January 5, 1981] or Tuesday [January 6, the day of the robbery]" after appellant mentioned that the crime took place "a few days ago." The prosecutor's "misstatements [did not make] the difference between a strong alibi and no alibi." *Corley v. United States,* 124 U.S.App.D.C. 351, 352, 365 F.2d 884, 885 (1966).

Given the strength of the government's case and the character of Vanerson's alibi testimony, we conclude that the jury's verdict was not substantially swayed by the prosecutor's interrogation. *Thomas v. United States,* 444 A.2d 952, 954 (D.C.App. 1982), *citing Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).[3]

*Affirmed.*

FERREN, Associate Judge, dissenting:

Appellant contends that, at the second trial, the prosecutor misrepresented the testimony of appellant's alibi witnesses, principally David Vanerson, at the first trial, in an attempt to create for the jury a false appearance of inconsistency. As to Vanerson, I agree with appellant. Because the credibility of appellant's alibi was a central issue in the case, the prosecutor's misrepresentation may have infected the verdict. Therefore, I respectfully dissent.

In cross-examining Vanerson, the prosecutor repeatedly asked him, over defense objection, whether he had not testified at

---

3. A premise of the dissent is that the prosecutor deliberately misled the witness in an attempt to distort the effect of his earlier testimony. In our view, the record does not support this interpretation of the prosecutor's motives. The witness' testimony was equivocal and unclear; the trial judge, in an effort to resolve

some of the ambiguity, permitted extensive questioning.

Similarly, we disagree with the dissent's speculation regarding the deliberations of the two juries in this case; we do not believe that such surmise can be used to support its position.

the first trial that he had learned of the robbery for the first time two weeks before the trial. In fact, Vanerson's testimony on that point at the first trial was as follows:

[DEFENSE COUNSEL]: Is there any other reason that you remember January 6, a Tuesday?

[VANERSON]: Yes.

[DEFENSE COUNSEL]: What was that?

[VANERSON]: Well, I discussed it—I say I discussed it.

[DEFENSE COUNSEL]: I'm sorry.

[VANERSON]: Say I discussed it about the 6th, about where I was at.

[DEFENSE COUNSEL]: You discussed it with who?

[VANERSON]: With Ben, and you, and several other people.

[DEFENSE COUNSEL]: At length?

[VANERSON]: Yes.

[DEFENSE COUNSEL]: Several times?

[VANERSON]: Uh-huh.

[DEFENSE COUNSEL]: Okay. Has that been in the last couple of weeks?

[VANERSON]: Yes, it was.

[DEFENSE COUNSEL]: Was that in preparation for this trial?

[VANERSON]: Yes, it was.

Vanerson, therefore, did not testify specifically as to when he first learned of the robbery; rather, he testified that one reason why he recalled the events of January 6 was that he had discussed them shortly before the first trial.

Nonetheless, the prosecutor repeatedly attacked Vanerson's credibility by insisting that he once had testified that he had first learned of the robbery shortly before the first trial. After Vanerson testified that he had discussed the incident with appellant in January or February, the following colloquy took place:

[THE PROSECUTOR]: Now, the last time you testified in this trial was in October, isn't that true, sir, that you said the first time you learned anything about this was two weeks before the trial?

[VANERSON]: It's possible.

The prosecutor then asked Vanerson if he had testified under oath and had intended to be truthful at the first trial. He replied that he had. She then asked him which version of events was the true one—the one he had given at the first trial, or the one he was giving now. Vanerson, obviously taking as true the prosecutor's version of his testimony at the first trial, then testified that his testimony at the first trial had been a result of confusion, and that he had thought that he was telling the truth then.

The prosecutor again asked him:

[PROSECUTOR]: So, when you testified the last time that it wasn't two or three days after the incident, but, indeed it was in October 1981, were you telling the jury the truth?

[VANERSON]: Yes, I thought I was at that particular time.

[PROSECUTOR]: What has changed to cause you today to say . . .

At this point, defense counsel objected and asked that the prosecutor be required to impeach the witness with his prior testimony. Counsel specifically objected to the prosecutor's mischaracterization of Vanerson's earlier testimony. The court, however, overruled the objection, saying, "I thought he admitted to that fact." Defense counsel indicated disagreement, but the court repeated, "I thought he did." The prosecutor then proceeded to question Vanerson for the third time on the same point, as follows:

[PROSECUTOR]: When you testified in October 1981, did you tell the members of the jury that the first time you learned about this case was a couple of weeks before the trial in October?

[VANERSON]: I guess I did. If you said I did—

[PROSECUTOR]: No, I am not telling you, I am asking you.

[VANERSON]: I don't recall.

The prosecutor then reviewed with the witness the first-trial testimony quoted above, and he agreed that this had been his testi-

mony. Then, for the fourth time, the prosecutor asked Vanerson:

[PROSECUTOR]: ... [S]o, at the last trial you did testify, didn't you, that the first time you discussed this was right before the trial?

Defense counsel again objected and was overruled. Vanerson responded:

[VANERSON]: Yes, if that's what I said.

[PROSECUTOR]: But that's your recollection?

[VANERSON]: Yes.

The prosecutor then asked Vanerson which of the two versions of events was true. Vanerson at first responded that both were true, then realizing both could not be true, reaffirmed that he had discussed the incident with appellant a few days after it happened.

Again over defense objection that the prosecutor was mischaracterizing the testimony, the prosecutor asked Vanerson for the fifth time:

[PROSECUTOR]: So, when you testified the last time that you hadn't talked about this offense a couple of days after it happened, but, indeed just two weeks before the trial started that wasn't so?

And Vanerson again replied that it was not. This persistent mischaracterization of the first trial testimony could hardly fail to impair the credibility of the witness.

Whether to reverse for prosecutorial misconduct is determined by balancing the gravity of the misconduct, the directness of its relationship to guilt or innocence, and the effect of corrective instructions, if any, against the weight of the evidence of appellant's guilt. *Villacres v. United States,* 357 A.2d 423 (D.C.App.1976). Here, the prosecutor repeatedly presented the witness with a misleading characterization of his testimony at the first trial, in a manner calculated to raise doubts about his credibility. The witness, testifying eight months after the first trial, apparently relied on the accuracy of the prosecutor's characterization, since his own recollection of his earlier testimony was hazy. If Vanerson's testimony at the second trial that he had spoken to appellant shortly after his arrest was truthful, Vanerson might well be puzzled as to why he would have testified to the contrary at the first trial. However, confronted with what he took to be the prosecutor's assertion that he had done so, he was constrained to say that his earlier testimony had not been truthful.

The credibility of appellant's alibi witnesses was central to this case. Therefore, any impairment of that credibility bore directly on the question of guilt or innocence. While the government presented a strong case, appellant also presented several witnesses to establish his alibi. As we have not the opportunity to observe the demeanor of the witnesses, it is difficult to evaluate with any precision the persuasiveness of appellant's defense. But there is some reason for thinking that the evidence as a whole was not overwhelmingly against appellant. The first trial, at which substantially the same evidence was presented, resulted in hung jury. The jury at the second trial deliberated for two days and at one point indicated to the court that it could not agree on a verdict. Because the jury obviously found this to be a close case, the doubt cast on Vanerson's credibility by the prosecutor's improper questions may well have affected the outcome. To allow the government license to distort testimony at the first trial in order to impair the credibility of defense witnesses at a second trial would virtually guarantee conviction at the second trial in any case where the credibility of defense witnesses is crucial. Such a result is intolerable.