Anthony R. BROWN, Appellant,

v.

UNITED STATES, Appellee.

Nos. 86–1205, 86–1238.

District of Columbia Court of Appeals.

Argued Feb. 15, 1989.

Decided Dec. 18, 1989.

Curt S. Hansen, with whom Greta C. Van Susteren, Washington, D.C., was on the brief, for appellant.

Patricia A. Riley, with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and Charles L. Hall, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before NEWMAN and SCHWELB, Associate Judges, and MACK, Senior Judge.[1]

NEWMAN, Associate Judge.

Brown contends that the trial judge violated his Sixth Amendment confrontation clause rights in his trial for armed rape and sodomy, by excluding from evidence medical records of the prosecutrix. These records were procured, pre-trial, by Brown's trial counsel, (not counsel on appeal), by serving subpoenas *duces tecum*, pursuant to Superior Court Criminal Procedure Rule 17(c),[2] upon Howard University Hospital, Southeast Community Hospital, and D.C. General Hospital. Howard University Hospital complied with the subpoena served upon it by delivering its records directly to counsel's office. The record is unclear as to what response, if any, the other two hospitals made to the subpoenas they received.

■ Brown contended at trial and repeats here that these records were vital to impeach the credibility of the prosecutrix; he asserts that the trial court violated his confrontation clause rights by prohibiting the use of the records for that purpose. Specifically, he contends that the medical records would have provided evidence to impeach the testimony of the prosecutrix about her sexual preferences, to establish a motive for fabrication, and to provide evidence of consent.[3]

If the trial court's evidentiary ruling was the only matter before us in this case,

---

1. Judge Mack was an Associate Judge of the court at the time of argument. She became a Senior Judge on November 16, 1989.

2. Rule 17(c) provides in relevant part: "A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or other objects designated therein."

3. We note that Brown's defense was one of innocent presence.

whether stated on constitutional or evidentiary grounds, we would affirm by an unpublished disposition, for we find no error in the trial court's decision to exclude the medical records. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 59, 107 S.Ct. 989, 1003, 94 L.Ed.2d 40 (1987) ("[d]efense counsel has no constitutional right to conduct his own search of [victim's juvenile protective service agency] files to argue relevance."); *Springer v. United States,* 388 A.2d 846, 854–55 (D.C.1978) (subject matter and extent of cross-examination is subject to sound discretion of trial court). *See also Johnson v. United States,* 452 A.2d 959, 960–61 (D.C.1982) (trial judge is entrusted with broad discretion to determine substance, form and quantum of evidence presented to jury); *Punch v. United States,* 377 A.2d 1353, 1358 (D.C.1977), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). *See generally Brewer v. United States,* 559 A.2d 317 (D.C.1989); *McLean v. United States,* 377 A.2d 74 (D.C.1977). We elect to publish because we were told at oral argument, as was the trial court at trial, that it has been a pattern and practice to use Superior Court Criminal Procedure Rule 17(c) to subpoena medical records for delivery directly to lawyers, rather than to the court. The implications of such a practice for the observance of the confidentiality requirement for certain medical records imposed by D.C.Code § 14–307[4] requires us to respond. The trial court ruled that due to the impact of § 14–307 on Rule 17(c), Brown's attorneys had improperly procured the medical records. We agree.

■ D.C.Code § 14–307 creates a statutory doctor-patient privilege in the District of Columbia. Several exceptions are contained therein. The only one having any bearing on this case is that contained in § 307(b), which applies in certain criminal cases in which "disclosure is required in the interests of public justice." We agree with the trial court that the "interest of public justice" is a determination to be made by the trial court and not by the attorney who causes the subpoenas to be issued. *See Catoe v. United States,* 76 U.S.App.D.C. 292, 295, 131 F.2d 16, 19–20 (1942). We must remember that the privilege belongs primarily to the patient. *See* D.C.Code §§ 6–2011–2053 (1981 and 1989 Supp.); *Clifford v. United States,* 532 A.2d 628, 637 (D.C.1987); *Wilson v. Thornton,* 416 A.2d 228, 236 (D.C.1980); *Calhoun v. Jacobs,* 79 U.S.App.D.C. 29, 30, 141 F.2d 729, 730 (1944). Thus, the patient has an interest in the determination of the interest-of-public-justice exception. But, the patient has no means of vindicating that interest, if the medical records can be subpoenaed directly to the attorney's office, instead of being delivered to the court under proper safeguards.[5]

Nor does the existence of Superior Court Criminal Procedure Rule 17(c) change the result. As the Supreme Court has said about Federal Rule of Criminal Procedure 17(c): "Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of subpoenaed materials." *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220, 71 S.Ct. 675, 679,

---

4. In so far as it is relevant to this case, D.C.Code § 14–307 reads:
   (a) In the ... District of Columbia courts a physician or surgeon or mental health professional ... may not be permitted, without the consent of the afflicted, or of his legal representative, to disclose any information, confidential in its nature, that he has acquired in attending a client in a professional capacity and that is necessary to enable him to act in that capacity....
   (b) This section does not apply to:
   (1) evidence in criminal cases where the accused is charged with causing the death of, or inflicting injuries upon, a human being,

and the disclosure is required in the interests of public justice....
   D.C.Code Ann. § 14–307 (1981 and 1989 Supp.)

5. Our conclusion in this regard is reinforced by the recent Supreme Court decision in *Pennsylvania v. Ritchie, supra,* which explicates the compulsory process clause of the Sixth Amendment in the context of a juvenile sexual abuse victim's protective service agency records sought by the defendant. (Defendant must make some showing to the trial court that the record sought contains material evidence before requiring the trial court to examine the record *in camera*).

95 L.Ed. 879 (1951) (citation omitted) (emphasis in original).[6]

In seeking any subpoena *duces tecum*, a party must show

> 1) that the documents are evidentiary and relevant; 2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; 3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and 4) that the application is made in good faith and is not intended as a "fishing expedition."

*Cooper v. United States*, 353 A.2d 696, 701 (D.C.1976) (citing *United States v. Nixon*, 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974)); *accord Turner v. United States*, 443 A.2d 542, 547 (D.C. 1982). When the doctor-patient privilege announced in § 14–307 applies, the person seeking the subpoena must make the additional showing required by that statute. Such showing must be made prior to issuing the subpoena.

Subsequent to oral argument, by a supplemental filing, the United States informed us that "the government does issue subpoenas on a regular basis, on behalf of and for return to the grand jury, for medical records of the victim and the defendant relating to injuries sustained in, or their physical condition at the time of, the offense at issue." It urges us not to decide the propriety of this practice, since it is not at issue before us. Furthermore, the government informed us that in the past it has "issued *trial* subpoenas, without prior court approval, for the medical records of the victim and the defendant relating to injuries sustained in, or their physical condition at the time of, the offense at issue." (Emphasis in original). While expressing its view that the latter practice of issuing trial subpoenas without prior court approv-

al can be justified as falling within the interests-of-public-justice exception, the government says it has discontinued the practice and will seek prior court approval unless and until this court decides otherwise.

We reiterate our holding. When D.C. Code § 14–307 applies and the exception relied upon is that contained in § 307(b), *prior* leave of the court is required before any subpoenas may be served by anyone for the production of material covered by that statute for use in preparing for, or otherwise in connection with, a trial. In determining the interest-of-public-justice exception, it will often, if not always, be appropriate to give the person whose records are being sought notice and an opportunity to be heard.

The United States is correct in saying that this case does not involve grand jury subpoenas implicating § 307(b), and we agree with the government that we need not decide this question. However, we continue to recognize the judiciary's role with respect to grand juries, *see In re Kelley*, 433 A.2d 704 (D.C.1981) (en banc), keeping in mind the limits thereon. *See, e.g., United States v. Moultrie*, 340 A.2d 828 (D.C. 1975). We further recognize the practical and legal difficulties a defendant would have in litigating a § 307(b) issue. The major practical difficulty would be in learning that such a subpoena exists. The legal difficulties are many and would include such issues as the defendant's standing with respect to the subpoenaed records of persons other than him or herself and available remedies. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988) (citing *United States v. Mechanik*, 475 U.S. 66, 79, 106 S.Ct. 938, 946, 89 L.Ed.2d 50 (1986)) (when court is asked to dismiss indictment prior to conclusion of trial, "dismissal of the indictment is appropriate only 'if it is

---

**6.** When, as in this case, a Superior Court rule is substantially identical to a federal rule, we give significant weight to decisions of the federal courts construing the comparable federal rule, *Beckwith v. Beckwith*, 379 A.2d 955, 959 n. 5 (D.C.1977), *cert. denied*, 436 U.S. 907, 98 S.Ct.

2239, 56 L.Ed.2d 405 (1978); *Campbell v. United States*, 295 A.2d 498, 501 (D.C.1972), although, we are not bound by such decisions. *Bazata v. National Ins. Co.*, 400 A.2d 313, 314 n. 1 (D.C. 1979).

established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations.").

With these thoughts in mind and while not deciding the issue, we deem it appropriate to issue a cautionary note. We presently can think of no rational basis upon which to distinguish subpoenas issued at the behest of a grand jury from our holding in this case.[7]

*Affirmed.*[8]

7. Nothing we have said about the interests-of-public-justice exception contained in § 307(b) is meant to express any views about the remaining exceptions in § 14–307.

8. We reject Brown's suggestion that we should remand this case to the trial court for that court to conduct an *in camera* examination of the medical records, an examination that the trial court specifically declined to do. Having had untrammelled and, as we have held, improper, access to these records and a full opportunity to rummage through them, Brown, through counsel, made no meaningful proffer that would satisfy the interests-of-public-justice exception.