Michael PERRITT, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CF–667.

District of Columbia Court of Appeals.

Argued March 11, 1993.

Decided April 11, 1994.

James Curt Bohling, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas C. Black, and Mark J. Carroll, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, Acting Chief Judge,* and TERRY, Associate Judge, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Appellant, Michael Perritt, was convicted of assault with intent to murder while armed ("AWIMWA"), D.C.Code §§ 22–503, –2403, –3202 (1989 Repl.), carrying a pistol without a license, D.C.Code § 22–3204(a) (1989 Repl.), and possession of a firearm during a crime of violence, D.C.Code § 22–3204(b), arising from the shooting of Robert Bell on August 10, 1991.

Appellant claims that the trial court erred by (1) improperly permitting the government to elicit testimony in its case-in-chief concerning the investigation and identification of appellant; (2) allowing the prosecutor to impeach appellant with a letter written by appellant's attorney, which was not inconsistent with appellant's testimony; and (3) allowing the prosecutor to cross-examine appellant about his employment and to present a rebuttal witness on a collateral matter. In addition, appellant contends the trial court's finding that no Jencks Act[1] statement of a witness existed was clearly erroneous and the court's delayed determination of the Jencks Act issue entitles him to a new trial.[2] We affirm.

On August 10, 1991, Bell and his girlfriend, while walking toward her grandmother's house at 1528 "S" Street, S.E., had an argument at approximately 2:00 a.m. A neighbor, residing at 1730 16th Street, came out from her door and asked the two "to keep the noise down." Bell and his girlfriend complied and began walking again. Shortly thereafter, Bell and appellant exchanged greetings, and appellant walked to the end of

Tamar M. Meekins, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

* Judge FERREN was an *Associate Judge* of this court at the time of argument. His status changed to *Acting Chief Judge* on March 18, 1994.

1. 18 U.S.C. § 3500 (1988).

2. In relation to this issue, we remanded the record for a Jencks Act hearing. *Perritt v. United States,* No. 92–CF–667 (D.C. Mar. 18, 1993). The trial court found after a hearing that the government had complied with the Jencks Act.

the block and then returned toward Bell and his girlfriend. When appellant approached, they began arguing, and appellant pulled out a gun and shot Bell seven times at close range.[3]

After the shooting, appellant ran from the scene, and Bell's girlfriend ran toward her grandmother's house and called the police. The neighbor testified that at approximately 2:00 a.m., she heard gunshots and walked out of her house finding Bell lying outside her gate. The neighbor testified that she asked Bell if he knew who had shot him, to which he replied that he did. However, not wanting to get involved, the neighbor did not ask Bell the name of the assailant.

A police officer, who appeared at the scene after the shooting, testified that Bell said "that he was shot, and that he knew who had shot him." The officer further testified that Bell's girlfriend told him that they both knew the assailant and "that he was known as 'Little Mike.'" Another officer accompanied Bell while he was transported to the hospital. This officer testified Bell said that "Little Mike" had shot him and that the assailant lived on 19th Street.

A detective interviewed Bell while in the hospital on August 14, 1991. Bell identified "Little Mike" as his assailant and further told the detective that he had known "Little Mike" for about five years. The detective testified that based on information he had obtained from other officers, he determined that "Little Mike" was in fact Michael Perritt, the appellant.

The detective also spoke with appellant's mother to inform her that her son was a suspect and that he should report to the Seventh District to speak with the detective. Thereafter, the detective received a letter dated September 9, 1991, from appellant's attorney which asserted appellant's Fifth Amendment rights to remain silent until a custody order was obtained.

The detective testified that following receipt of this letter, he proceeded to construct a photo array which included the appellant. He attempted to obtain a photograph of appellant from his junior and senior high schools and from appellant's mother, all without success. After obtaining a photo of appellant from another source, the detective constructed a photo array of nine black and white pictures of "the Metropolitan Police Department type." On October 6, 1991, the detective showed the photo array to Bell and his girlfriend separately at Bell's house. Neither Bell nor his girlfriend knew that appellant's photo was going to be in the array. Both Bell and his girlfriend identified appellant as the man who had shot Bell. Appellant was later arrested on October 10, 1991.[4]

■ Appellant contends that the government, in its case-in-chief, improperly elicited testimony from the detective regarding the investigative procedures employed in the case, claiming that the testimony was inadmissible hearsay, irrelevant and generally prejudicial to Perritt's case. Specifically, appellant objects to the following statements related by the detective in his testimony: (1) that the police paperwork listed the suspect's name as "Little Mike;" (2) that appellant's mother had told the detective that she did not have a picture of her son; and (3) that appellant's attorney had sent the detective a letter stating that she represented appellant.

■ It is fundamental that an out-of-court statement is not hearsay if it is offered for a purpose other than to prove the truth of the matter asserted. In this proceeding, the statements of the detective were offered to explain the investigatory process, specifically to show the detective's efforts in arranging for an opportunity for Bell and his girlfriend to identify the appellant. The statements were not offered to prove that the police listed the suspect's name as "Little Mike," or

---

**3.** A doctor who examined Bell at the hospital testified that his body revealed six entrance wounds.

**4.** During cross-examination, appellant asserted that he had a job at a barber shop since January or March of 1991 where he earned $50 per week. Appellant further asserted that he worked at the barbershop about four days per week. In response to appellant's testimony, the government presented a rebuttal witness who was a partner at the barber shop and testified that appellant worked there infrequently and less than four times per week.

that appellant's mother had told the detective that she did not have a picture of her son, or that appellant's attorney had sent the detective a letter stating that she represented the appellant. Rather, these statements were offered to show the investigation undertaken by the MPD detective which led to the eventual identification of appellant by Bell and his girlfriend.

█ Evidence outlining the background of an investigation is admissible as non-hearsay. *See United States v. Freeman,* 816 F.2d 558, 563 (10th Cir.1987) (testimony offered not for its truth but to explain why the officers made certain preparations in anticipation of the arrest was not inadmissible hearsay); *United States v. Scott,* 678 F.2d 606, 612 (5th Cir.) (out-of-court statement offered for the limited purpose of explaining why a government investigation was undertaken is not hearsay), *cert. denied,* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 285 (1982); *United States v. Mancillas,* 580 F.2d 1301, 1309 (7th Cir.) ("outlining the background of the investigation, with the evidence not being offered to prove its truth, it could be said not to be nonadmissible as hearsay"), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978).

The statements made by the detective were offered to show the investigatory process which culminated in the identification of appellant by two people present at the scene of the shooting, *i.e.,* Bell and his girlfriend. Accordingly, the trial court did not err in determining that the detective's testimony concerning the investigation of the shooting was admissible for the nonhearsay purpose for which it was offered.

█ Appellant also contends that such testimony of the detective was irrelevant. In order to determine whether evidence is relevant to a particular proceeding, the trial court first must determine whether such evidence is relevant to a material issue, and that when balanced against competing interests, it is not likely to unduly prejudice the jury. *Johnson v. United States,* 452 A.2d 959, 960 (D.C.1982) (per curiam). The trial court is

"entrusted with broad discretion to determine the substance, form, and quantum of evidence which is to be presented to a jury." *Id.* This court's scope of review is limited to whether the trial court abused its discretion. *Id.*

Here, the trial court properly determined that the detective's testimony, which explained the course of the investigation, was relevant because it was of interest for the jury to know why an arrest did not occur prior to October 10, 1991, two months after the offense.

> [J]uries in criminal cases, before being called upon to decide the awesome question of guilt or innocence, *are entitled to know more of the circumstances which culminate in a courtroom identification—* an event which standing alone, often means very little to a conscientious and intelligent juror, who routinely expects the witnesses to identify the defendant in court and who may not attach great weight to such an identification in the absence of corroboration.

*Morris v. United States,* 398 A.2d 333, 337–38 (D.C.1978) (emphasis supplied) (quoting *Clemons v. United States,* 133 U.S.App.D.C. 27, 40, 408 F.2d 1230, 1243 (1968) (en banc), *cert. denied,* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969)). The detective's testimony explained the interval between the time of the shooting and the time that he was able to identify appellant. No explicit references were made regarding appellant's prior criminal history.[5] As such, no evidence of "other crimes" was presented to the jury to show that appellant had a propensity to commit crimes. *See Drew v. United States,* 118 U.S.App.D.C. 11, 15, 331 F.2d 85, 89 (1964).

█ The trial court also properly determined that the detective's testimony describing his investigation did not unduly prejudice the appellant. The trial court has discretion to balance the probative value against the prejudicial effect of the evidence. *Id.* "If evidence is otherwise relevant, the fact that it may tend to suggest other criminal activity by the defendant does not necessarily make

---

**5.** Language in a letter appellant's counsel sent to the detective did not specifically mention that appellant had any prior arrests or convictions, but rather asserted appellant's right to remain silent to "this and all other offenses."

it inadmissible." *Robinson v. United States,* 513 A.2d 218, 221 (D.C.1986) (citations omitted).

Here, appellant contends that the detective's testimony unduly prejudiced him because the jury could infer from it that he was involved in other criminal activity based on: the reference to the police paperwork which listed appellant's name as "Little Mike," the detective's attempts to procure a photograph of appellant, the conversation with appellant's mother in which she told the detective that she did not have a photo of her son, and the letter sent by appellant's attorney to the detective asserting appellant's right to remain silent as to "this and all other defenses."

The trial court determined that the probative value of the detective's testimony outweighed its prejudicial effect because both Bell and his girlfriend presented strong evidence of appellant's guilt. *See Mancillas, supra,* 580 F.2d at 1310 (no reversible error committed where testimony was corroborated). For instance, both Bell and his girlfriend referred to appellant as "Little Mike." Both Bell and his girlfriend, as the two eyewitnesses at the scene, named appellant as the assailant shortly after the shooting occurred. Further, both of these eyewitnesses selected appellant from a pretrial photo array constructed by the government. Accordingly, the trial court properly concluded that the probative value of the corroborated testimony outweighed any prejudice to the appellant:

> [t]he importance that a jury know of the reality of a fair pretrial identification weighs with more substance in the scales of justice than speculative possibility that the jury may conjecture defendant was involved in some offense.

*Brown v. United States,* 387 A.2d 728, 730 (D.C.1978) (quoting *United States v. Hallman,* 142 U.S.App.D.C. 93, 95, 439 F.2d 603, 605 (1971)).

We agree with appellant in his next contention that the trial court erred when it allowed the prosecutor to impeach him by using a letter written by appellant's attorney to the detective in order to establish that appellant knew that he was a suspect in a shooting in early September of 1991. Appellant testified on direct examination that he had first learned that he was a suspect in the shooting during the first week in September when the detective contacted his mother. On cross-examination, appellant testified that he only learned the *details* of the shooting after his arrest on October 10, 1991. "Complete contradiction is not required, but at a minimum there must be a prior assertion of fact inconsistent with the assertion made on the stand." *Outlaw v. United States,* 604 A.2d 873, 878 (D.C.1992) (citation omitted). Here, the contents of the letter, which had been previously admitted into evidence, were consistent with appellant's direct testimony. Accordingly, the letter was not at variance with appellant's testimony, and thus the prosecutor's attempted impeachment was improper. *Id.*

The next question is whether the improper impeachment of appellant was harmless error. The familiar test for harmless error is whether this court can " 'say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' " *Franklin v. United States,* 555 A.2d 1010, 1013 (D.C.1989) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). The decisive factors for determining whether an error is impermissibly prejudicial are "the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error." *Outlaw, supra,* 604 A.2d at 880 (internal quotations and citation omitted).

Applying these factors to this proceeding, we conclude that the case was not a close one, that the issue affected by the error was not crucial, and that steps taken to mitigate the error were sufficient to counteract the prejudice. First, we agree that the government's case was strong. Both Bell and his girlfriend, the two eyewitnesses at the scene, had known appellant for several years, and standing within less than fifteen feet of him, recognized him as the assailant. Both eyewitnesses selected appellant from a photo

array, and further, both eyewitnesses knew that appellant was referred to as "Little Mike." Additionally, these eyewitnesses had ample opportunity to observe the assailant before the shooting occurred. *See, e.g., Frederick v. United States*, 472 A.2d 888, 890 (D.C.1984) (the government's case was strong, and thus no prejudicial error arose where robbery victims were only a few feet from the gunman and that one of the victims was familiar with the gunman because he had seen him previously in the southeast area).

Second, the issue affected by the error was not central to the outcome of the case. The subject of the impeachment, *i.e.*, whether appellant learned that he was a suspect in the shooting on the date of his arrest, October 10, 1991, or in early September of 1991, when the detective visited his mother, was not at issue in the case. Accordingly, the impact upon the jury in denigration of appellant's credibility "was unlikely to have determined the outcome reached by the jury in view of the weight of the other evidence against him," *Jackson v. United States*, 377 A.2d 1151, 1155 (D.C.1977) (citing *Wacksman v. United States*, 175 A.2d 789 (D.C.1961)),[6] and the error was therefore harmless.

▬ Lastly, the record in this proceeding was remanded to the trial court for appropriate proceedings in relation to appellant's contention concerning the Jencks Act issue. Appellant had argued that the trial court erred during the trial in failing to hold a hearing to determine whether the government had Jencks Act material pertaining to a government witness which had not yet been produced to the defendant as required by that statute. Specifically, a particular 911 recording was being sought.

The government witness who said she observed the shooting by the defendant testified that she immediately ran to her nearby grandmother's house and made a 911 call to the police reporting the shooting. It was this recording which was being sought on remand.

The trial court conducted an evidentiary hearing to explore this issue. Testimony was given by a police officer skilled in relation to 911 recordings and computerization in relation to them. The upshot of the hearing was that a 911 recording of a call by the government witness was not established. The police witness, who was something of an expert on such matters, testified that computer records do not necessarily reflect every 911 call because of equipment or personnel error.

Various recordings of 911 calls during the period in question were presented for exploration at the remand hearing. After considerable testimony and examination of several recorded calls during the crucial period, it was evident that it could not be established that any of them contained a report of the crime to the police. In other words, no Jencks Act statement was established to be in the government's possession. While there was some debate about one recording produced, it was not shown to be a report by the government witness and, additionally, the witness stated the voice on that recording was not hers.

▬ For a Jencks Act statement to be produced to a defendant for cross-examination, it must first be established that the document is actually a statement of the government witness. *See, e.g., Rosenberg v. United States*, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959) (an early decision of that Court construing the then newly-enacted Jencks Act).

After the evidentiary hearing, the trial court concluded that "the government neither possessed any Jencks materials nor failed to produce any Jencks materials in regards to [the] government witness...." We are unable to conclude that the court's findings and conclusions were clearly erroneous. In addition, the government witness involved saw the shooting, knew the defendant charged with the shooting and identified him to the police when they arrived on the scene. Appellant was therefore not seriously prejudiced by the absence of a 911 recording

---

**6.** Appellant also contends the trial court erred in permitting the government to cross-examine him regarding his employment at a barbershop, a collateral matter, and to present rebuttal evidence concerning that previous testimony. It is enough to say that in no event was there anything resembling prejudicial error in respect to this contention. It was simply superfluous.

reporting the crime to the police, all circumstances considered.

Accordingly, the judgment of conviction is

*Affirmed.*