Larry J. GREEN, Appellant,

v.

UNITED STATES, Appellee.

Melvin T. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 93–CF–1085, 93–CF–1212.

District of Columbia Court of Appeals.

Argued Oct. 27, 1994.
Decided Dec. 29, 1994.

---

Jon S. Pascale, for appellant Green.

William E. Seals, for appellant Williams.

Clendon H. Lee, Jr., Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and

John R. Fisher, Asst. U.S. Atty., were on the brief, for appellee.

Before WAGNER, Chief Judge, FARRELL, Associate Judge, and LEVIE,* Associate Judge of the Superior Court of the District of Columbia.

PER CURIAM:

A jury found appellant Green guilty of conspiracy to obstruct justice (D.C.Code §§ 22–105(a), –722(a)(2) (1982)), two counts of obstruction of justice (*id.*, § 22–722(a)(2)) and one count of felony threats (*id.*, § 22–2307). The jury found appellant Williams guilty of two counts of obstruction of justice, one count of felony threats and two counts of simple assault (*id.*, § 22–504). The charges all arose from alleged behavior between August 22 and October 30, 1992, in which Green and Williams individually assaulted or threatened (and in one instance assertedly kidnapped) Green's estranged wife to attempt to force her to abandon criminal contempt charges against Green stemming from his violation of civil protection orders (CPOs).

Although appellants raise a variety of issues, only two merit more than summary disposition.[1] We reverse one of Green's convictions for obstruction of justice, but otherwise affirm.

## I.

■ Appellant Green argues that the failure of the government to provide him with information regarding Ms. Green's hospitalization violates the doctrine of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1989).

1. The evidence was sufficient to support Green's conspiracy conviction. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (proof of participation in a conspiracy may be circumstantial). The succession of approximately eight overt acts alleged and proven, linked by the common objective of deterring Ms. Green from prosecuting the CPO violations, established the required concert of action between Green and Williams. The evidence was likewise sufficient to support Green's conviction for threats and obstruction of justice based on a letter delivered to Ms. Green on September 29, 1992. See note 9, *infra*.

Contrary to appellant Williams' contention, the evidence was sufficient for the jury to find that he threatened Ms. Green's son on September 11, 1992. *See, e.g., Postell v. United States*, 282 A.2d 551, 553 (D.C.1971). Moreover, there was no reversible error in the judge's refusal to instruct the jury that the CPOs were admissible only against appellant Green. Earlier, the judge had told the jury that "[a]ny evidence pertaining to Mr. Williams would begin in approximately September of 1992," a date which succeeded two of the CPOs; any prejudice from the jury's possible consideration of the third CPO against Williams is too slight to warrant reversal.

L.Ed.2d 215 (1963), and entitles him to a new trial. Given the circumstances presented here, the trial judge's conclusion that the government did not violate *Brady* was reasonable and must therefore be sustained. *See Matthews v. United States*, 629 A.2d 1185, 1201 (D.C.1993).

On the day of sentencing, Mr. Green's trial counsel, in arguing a motion for a new trial, informed the trial court that, upon reading the presentence report, he learned that Ms. Green had been hospitalized for psychological problems three months before the commencement of the April, 1993 trial.[2] Mr. Green's counsel asserted that this lack of knowledge prevented him from cross-examining Ms. Green about this hospitalization.[3] Government counsel responded that he was "not aware that anything about that hospitalization had to do with any problems of—that may have led a juror to believe that she fabricated her testimony."

The trial court denied the motion for a new trial, noting, among other things, that there had been extensive cross-examination of Ms. Green about her psychological state and her treatment by a psychologist. The trial judge believed that "fundamentally ... her credibility was minutely examined by this jury, and the jury's verdict reflects its assessment of her credibility."

It is significant that, upon seeing a reference in the presentence report to a January hospitalization,[4] Mr. Green's trial counsel apparently undertook no efforts to obtain the hospital records or to seek a continuance of the sentencing in order to investigate the issue of Ms. Green's hospitalization. Moreover, his counsel presented no information which would have enabled the trial court to evaluate whether the hospital records might arguably constitute *Brady* material and, if so, whether the failure to disclose this information would have necessitated a new trial. *See United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

In these circumstances, there was no obligation upon the trial court, *sua sponte*, to initiate any further inquiry into the records or information surrounding Ms. Green's hospitalization.[5] Trial counsel cannot ambiguously refer to potentially important evidence, fail to take appropriate steps to obtain this evidence and then seek a reversal on appeal based upon the absence of such evidence.

## II.

■ The evidence was insufficient to support Green's conviction for obstruction of justice under count seventeen. The evidence underlying that charge rested upon his asserted complicity in threatening Ms. Green by a letter delivered to her sometime after October 2, 1992.[6] The government concedes

---

2. Because appellant Williams was arrested and detained before Mr. Green, a trial date for Mr. Williams was set for January, 1993. Prior to that trial date, the government moved to continue Mr. Williams' trial because of Ms. Green's hospitalization and the government's wish to try Mr. Williams with the recently indicted co-defendant, Mr. Green.

3. During the trial, Mr. Green's counsel cross-examined Ms. Green about her psychological treatment over the course of twenty years for problems stemming from alleged abuse inflicted upon her.

4. Because the presentence report was not included by any party as part of the record, we have no knowledge as to the precise information contained in that report.

5. In the instant case, the credibility of Ms. Green was a crucial ingredient of the government's case and was a much contested issue, as evidenced by the extensive cross-examination of Ms. Green

and the use of defense witnesses to challenge her credibility. In essence, this was the classic close case, the decision of which no doubt rested virtually exclusively on the jury's assessment of Ms. Green's credibility. *See United States v. Kiszewski*, 877 F.2d 210, 215–16 (2d Cir.1989). Had appellant's counsel pressed the issue in the court below, there might well have been a basis on which to require the production of the records of Ms. Green's hospitalization for review by the trial court. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 57–58, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987); *Exline v. Gunter*, 985 F.2d 487, 488–91 (10th Cir.1993); *Brown v. United States*, 567 A.2d 426, 426–27 n. 5 (D.C.1989) *cert. denied*, 494 U.S. 1037, 110 S.Ct. 1497, 108 L.Ed.2d 632 (1990).

6. The letter stated:

Maryleah [Ms. Green], look, if you do not drop the charges on me, I plan to have something done to you and the children. You know what I mean by that, you are no damn fool. You know what I did to you on West Virginia

that Green neither wrote the letter[7] nor delivered it.[8] It contends, nonetheless, that information in the letter itself could only have been known by "Green or a close associate" of Green, the reasonable inference being that appellant Williams (Green's alleged co-conspirator) authored the threat at Green's behest. *See* D.C.Code § 22–105 (accomplice liability).

But the knowledge the government relies on is this: "You know what I did to you on West Virginia Avenue when you called the police...." Although there was testimony that the Greens formerly lived on West Virginia Avenue, N.E., there was no evidence fairly allowing a jury to find beyond a reasonable doubt that only Green or someone he caused to write the letter would have known that fact. Moreover, while Ms. Green testified to past beatings administered to her by her estranged husband, she never linked those beatings to a prior assault while the pair lived at that address and as a result of which the police were called. Similarly, the author's threat to harm "Maryleah" and "the children" implied no knowledge unique to Green or a confederate. And while the demand that Ms. Green "drop the charges" echoed language Williams orally had used in his September threats to Ms. Green and her son, the phrase scarcely had a signature quality that betrayed Williams as its author to the exclusion of others not claimed to be Green's principal.

Further, the evidence adduced at trial raised the possibility of the involvement in the operative events of another individual, Keith Parker. There was testimony that

Parker was with Williams on one of the occasions when Williams assaulted and threatened Ms. Green's son and that Parker was a friend of Green and Williams. These references to Parker create a further reason to doubt whether Williams, acting for Green, did the acts constituting the offense alleged in count seventeen.

All told, while the contents of the October letter, together with Williams' other acts of complicity, made it likely—even highly likely—that Williams was the author, that is not the same as proof beyond a reasonable doubt that Williams authored the October letter at the behest of Green. On this evidence, no rational juror could have found beyond a reasonable doubt that Green, acting through Williams, made the threat constituting the obstruction of justice charged in count seventeen. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).[9]

Accordingly, the judgment on count seventeen is reversed and the case is remanded with directions to enter a judgment of acquittal on that count. In all other respects the judgments of conviction as to both appellants are affirmed.

*So ordered.*

Avenue when you called the police what they did to you when they are not going to help you now. Call your attorney and tell them I drop the charges on you.

7. The government concedes the accuracy of the conclusion of a former documents examiner for the FBI, called as an expert by the defense, on this point.

8. It appears that the letter was hand-delivered to Ms. Green's house rather than sent through the mail. Appellant was concededly in jail at the time the letter was delivered.

9. Admittedly, the government also relies on the internal contents of the letter delivered to Ms.

Green on September 29 to establish threats and obstruction of justice on that occasion, and we have sustained the sufficiency of the evidence on those counts. Note 1, *supra.* But expert testimony (unchallenged by the government) did not rule out Green as the writer of that letter, see note 7, *supra,* and the letter threatened to harm Ms. Green if she "show[ed] up and tr[ied] to keep me in this place"—other evidence revealing that Green was then in jail awaiting a criminal contempt hearing. Moreover, the jury could properly find this threat prefigured in Green's conduct a month earlier (August 22) when he told Ms. Green that he did not care about the CPO and that—in Ms. Green's words—"I better watch my back and he will be around when I least expect him to be."