Dwain MERCER, Appellant,

v.

UNITED STATES, Appellee.

Nos. 01–CF–330, 01–CO–1122.

District of Columbia Court of Appeals.

Argued Dec. 17, 2003.

Decided Sept. 2, 2004.*

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment. The court has granted appellee's motion to publish.

112

Judith A. Lovelace, appointed by the court, for appellant.

Bernard J. Delia, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and WASHINGTON, Associate Judges, and KING, Senior Judge.

PER CURIAM:

Dwain Mercer and Antonio Terrell were indicted on April 2, 1996, for first-degree murder[1] while armed and associated weapons offenses related to the shooting death of Omar Johnson that occurred on June 1, 1995. After a jury trial, Mercer was convicted of second-degree murder and weapons offenses. On appeal, Mercer's convictions were reversed, *Mercer v. United States*, 724 A.2d 1176 (D.C.1999). Mercer was tried again in May 2000, and

1. See D.C.Code §§ 22–2401, –3202 (1981), *re-codified at* D.C.Code §§ 22–2101, –4502 (2001) respectively.

again convicted of second-degree murder and the weapons offenses.[2] A timely notice of appeal was filed. Subsequently Mercer filed a *pro se* motion to vacate his conviction pursuant to D.C.Code § 23–110 (1981) which was denied without a hearing. A timely notice of appeal was filed and the two appeals were later consolidated.

In the direct appeal, Mercer claims the trial court committed reversible error in admitting the prior recorded testimony of four witnesses at his murder trial. He also contends the court erred in denying his post-conviction motion. We affirm.

## I.

■ Mercer first contends that the trial court erred in admitting the grand jury testimony of a witness, Linda Washington, who had testified at the previous trial and who appeared as a witness at the second trial. Washington was declared unavailable at the second trial, however, because having recently suffered a head injury and a series of strokes, she was unable to recall in any meaningful way the events of the day of the shooting, her testimony before the grand jury, or her testimony in the first trial. The government used the prior trial testimony—where Washington admitted testifying before the grand jury—to lay the foundation to impeach her claim at the second trial that she could not recall testifying before the grand jury. After she testified that she could not "remember the case at all," the government was permitted to read a portion of the grand jury testimony in which she said she saw Mercer shoot the victim. The jury was later instructed that if it found the grand jury testimony inconsistent with the witness's present testimony in court, it could consider the inconsistency both in judging the credibility of the witness at the trial and as proof that what was said before the grand jury was true.

Mercer contends that the trial court erred in allowing the government to impeach Washington with her grand jury testimony because he had no opportunity to cross-examine Washington's grand jury testimony, and as a result since the witness was unavailable, only the prior trial testimony should have been allowed. We do not agree.

■ Because Washington was unavailable,[3] the trial judge did not err in allowing the government to use her prior trial testimony, where she stated that she recalled testifying before the grand jury, to lay the foundation for the introduction of her grand jury testimony. *See Bedney v. United States,* 684 A.2d 759, 763 (D.C. 1996). Nor did the trial judge err in admitting the grand jury testimony under D.C.Code § 14–102(b) (1996) as a prior inconsistent statement and as substantial evidence. Under § 14–102(b) a witness's prior statement may be introduced as substantive evidence if "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is ... inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding ...." *McConnaughey v. United States,* 804 A.2d 334, 340 n. 5 (D.C.2002). It is settled that grand jury testimony,

---

**2.** Terrell was also convicted of second-degree murder and weapons offenses at the first trial, but his convictions were affirmed on appeal. Terrell testified for the government at the second trial with the understanding that the government would inform the judge who was considering his motion to reduce sentence of his cooperation.

**3.** Mercer stipulated that Washington was unavailable. In addition, his counsel used Washington's prior trial testimony in cross-examining her at the second trial.

assuming all other requirements are met, is admissible as substantive evidence under D.C.Code § 14–102(b). *Id.*

All the statutory requirements were met. At the second trial, Washington testified that she had no memory of what happened the night of the murder. Before the grand jury, however, she testified that she saw Mercer shoot the victim. Thus, her grand jury testimony contradicted her trial testimony and was therefore admissible as a prior inconsistent statement under § 14–102(b). *See Mercer,* 724 A.2d at 1195–96; *United States v. Owens,* 484 U.S. 554, 563, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). *See also United States v. Milton,* 303 U.S.App. D.C. 386, 393–94, 8 F.3d 39, 46–47 (1993), *cert. denied,* 513 U.S. 919, 115 S.Ct. 299, 130 L.Ed.2d 212 (1994) (grand jury testimony admitted as prior inconsistent statement where witness testified she remembered almost nothing about the incident or what she told the grand jury); *United States v. Bigham,* 812 F.2d 943, 946–47 (5th Cir.1987) (grand jury testimony of witness that he saw assault was admitted where witness testified at trial that he had no recollection of incident).

In addition, Mercer's counsel cross-examined Washington at the second trial with respect to her prior knowledge of the murder. For example, Washington gave an affirmative answer at the second trial when asked whether she recalled testifying at the first trial that she had not seen Mercer shoot the gun. That testimony directly contradicted Washington's grand jury testimony that was used for impeachment.

■ Mercer argues that Washington's grand jury testimony was not admissible because it was not subject to cross-examination. The operative question, however, is not whether the witness was cross-examined before the grand jury, but whether the witness was subject to cross-examination at trial. While it may be a "semantic inconsistency" or a "verbal curiosity," it is possible, and in fact not uncommon, for a witness who appears at trial to be considered unavailable for some purpose, but deemed available for and subject to cross-examination. *See Owens,* 484 U.S. at 563–64, 108 S.Ct. 838.[4]

Accordingly, we conclude that the trial court properly admitted Washington's pri-

---

4. Subsequent to oral argument in this case the Supreme Court decided *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 1369 n. 9, 158 L.Ed.2d 177 (2004), and we requested supplemental briefing from both parties. In *Crawford,* the Supreme Court affirmed the principle that "when a declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* (citing *California v. Green,* 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). We are satisfied that the requirements of *Crawford* were met here. Nothing in that opinion suggests that the Court intended to limit its holding in *Owens, supra,* and we are bound to follow Supreme Court precedent unless it is expressly limited or abandoned. *See Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). In *Owens,* a witness who had given a prior identification of an

individual was not able to recall making that prior identification when called at trial due to memory loss. The defendant argued that the memory loss suffered by the declarant precluded him from being cross-examined. The Supreme Court held that those circumstances, which are essentially what occurred here, do not present Confrontation Clause problems. "It is sufficient that the defendant has the opportunity to bring out matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even what is often a prime-objective of cross examination, ... the very fact that he has a bad memory. [T]he ability to inquire into these matters suffices to establish the constitutionally requisite opportunity for cross-examination ... [even] when the witness's past belief is introduced and he is unable to recollect the reason for that past belief." *Owens,* 484 U.S. at 564, 108 S.Ct. 838.

or trial testimony on the grounds that she was unavailable and properly admitted the grand jury testimony as an inconsistent statement.

## II.

### A.

■ Mercer next challenges the use of the prior trial testimony of three other witnesses, Robin Motley, Natasha Stringfellow, and Dominic Gibson, each of whom testified at the first trial but were unavailable at the second trial.[5] The testimony of each was admitted under the prior recorded testimony exception to the hearsay rule. Mercer contends that the testimony of those witnesses should not have been admitted because the cross-examination at the first trial was inadequate. In addition, with respect to Gibson, Mercer claims that evidence adduced at the second trial rendered the first trial cross-examination of Gibson ineffective, and with respect to Motley, Mercer challenges the admissibility of three specific statements within her prior testimony on separate grounds.

■ As we said before, prior recorded testimony is admissible as an exception to the hearsay rule under D.C.Code § 14–303 [6] if the proponent establishes that

(1) the direct testimony of the declarant is unavailable; (2) the previous testimony was given under oath or affirmation in a legal proceeding; (3) the issues in

the two proceedings were substantially the same; and (4) the party against whom the testimony is now offered had the opportunity to cross-examine the declarant at the former proceeding.

*Feaster v. United States,* 631 A.2d 400, 405 (D.C.1993) (internal citations omitted). We review a trial court's determination to admit or deny evidence under this exception for abuse of discretion, and also treat the determination as a factual finding to be reversed only if it is "plainly wrong or without evidence to support it." *See Skyers v. United States,* 619 A.2d 931, 934 (D.C.1993) (noting "some conflict in our decisions concerning the applicable standard of review").

Mercer does not challenge the determinations that each of these three witnesses was unavailable nor does he claim that the prior testimony was not given under oath at a judicial proceeding. Further, he concedes that at the first trial he had an opportunity to cross-examine each of these witnesses. *Skyers,* 619 A.2d at 934. Mercer argues, however, that the prior testimony of each of these three witnesses should not have been admitted at the second trial because the prior testimony was given at the first trial which involved Mercer and his co-defendant, Melvin Terrell. Mercer argues that because the first trial involved a co-defendant, the issues were

---

5. Robin Motley and Natasha Stringfellow did not respond to subpoenas ordering them to appear to testify, and repeated efforts to locate them were unsuccessful. Accordingly, both sides agreed with the trial judge's determination that those two witnesses were, as a matter of law, unavailable to testify at the second trial. The third witness, Dominic Gibson, appeared at the second trial but refused to take the oath and repeatedly refused to testify. Both sides agreed with the trial judge's determination that Gibson was unavailable to testify at the second trial.

6. See D.C.Code § 14–303. Testimony of deceased or incapable person.

When a party, after having testified at a time while he was competent to do so, dies or becomes incapable of testifying, his testimony may be given in evidence in any trial or hearing in relation to the same subject-matter between the same parties or their legal representatives, as the case may be; and in such a case the opposite party may testify in opposition thereto.

not the same. This argument is without merit.

In satisfying this prong of the prior recorded testimony admissibility test, we have never required the issues and parties to be identical; we have only required that the issues be "substantially similar." *Epstein v. United States*, 359 A.2d 274, 277 (D.C.1976). The issues in the second trial were indeed substantially similar, as the charges were essentially identical[7] and the evidence was largely the same. Mercer makes the conclusory statement that the two trials differed because the first involved a co-defendant, but does not specifically say how the trials differed.[8] At the first trial, each of these three witnesses offered testimony that in some way implicated Mercer, and Mercer availed himself of the opportunity to cross-examine each witness on all of their testimony. *See Skyers*, 619 A.2d at 934. This full cross-examination[9] "comported with the principal *purpose* of cross-examination: to challenge 'whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed.'" *Feaster*, 631 A.2d at 406–07 (quoting *Ohio v. Roberts*, 448 U.S. 56, 71, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

Accordingly, because the issues in the second trial with respect to Mercer were substantially similar to those as in the first trial, where Mercer had an opportunity to cross-examine each of the witnesses in question, we conclude that the trial court did not abuse its discretion in admitting the prior trial testimony of each of the unavailable witnesses.

### B.

■ ■ Mercer also challenges portions of Dominic Gibson's testimony on an alternate theory, specifically that new evidence was introduced in the second trial, and Mercer never had an opportunity to cross-examine Gibson with regard to that evidence. The "new evidence" came in the form of testimony offered by Antonio Terrell, who was Mercer's co-defendant at the first trial. Terrell did not testify during the first trial.

Mercer argues that certain statements made by Terrell during his testimony contradicted statements made by Gibson during the first trial with regard to the issue of whether Gibson entered Terrell's car after Johnson was shot, and if so, when that action occurred. Mercer argues that this "contradiction" undermines Gibson's credibility as a witness, and that he was deprived of an opportunity to cross-examine Gibson on this point to show possible bias. This argument fails for several reasons.

First, it is not clear that Gibson's and Terrell's statements contradict each other, as it is reasonable to conclude that the apparent contradiction regarding Gibson's whereabouts during a certain period of time stemmed from the fact that the two

---

7. At the second trial, the lead charge was second-degree murder while the lead charge at the first trial was first-degree murder. The jury at the first trial, however, found Mercer guilty of second-degree murder as a lesser included offense of first-degree murder.

8. *See, e.g., United States v. Licavoli*, 725 F.2d 1040, 1048–49 (6th Cir.1984) (the introduction of additional charges at a subsequent trial of same defendants did not substantially alter the issues in the case; therefore, prior trial testimony was admissible).

9. Because a complete cross-examination was conducted at the first trial, the requirements set forth in *Crawford* were met.

individuals were actually referring to different periods of time.[10] However, even if we credit Mercer's contention that the testimony of the two witnesses presents a bona fide contradiction, the argument is still without merit. Gibson's trial testimony was properly admitted as prior sworn testimony of an unavailable witness, and there is no general exception to the admission of such evidence on the grounds that it may be contradicted by testimony at the subsequent trial.

Moreover, Mercer does not suggest that the alleged discrepancy regarding Gibson's presence in Terrell's automobile pertains to a relevant factual issue in the case; it is clear that Omar Johnson was shot before Gibson either did or did not get into Terrell's automobile. Mercer only argues that his lack of an opportunity to cross-examine Gibson on this asserted discrepancy deprived him of an opportunity to undermine Gibson's overall credibility. The factual "contradiction" involved an entirely peripheral matter, and we are satisfied that exposing such a contradiction would not call the witness's overall credibility into question to any extent. Furthermore, contrary to what he now suggests, Mercer did in fact avail himself of the opportunity to use this "contradiction" to undermine Gibson's credibility—during closing argument Mercer's counsel brought up the possible discrepancy, and in fact, suggested to the jury that such a contradiction called Gibson's credibility into question.

Accordingly, for all the reasons stated, we conclude that the trial judge did not abuse her discretion in admitting Terrell's testimony regarding Gibson's whereabouts immediately after Omar Johnson's shooting.

## C.

Mercer also contends that three statements in Robin Motley's testimony from the first trial, which were admitted at the second trial pursuant to D.C.Code § 14–303, constituted inadmissible hearsay.[11] After establishing that Motley was unavailable at the second trial, the trial judge asked both sides if they objected to admitting any statements from Motley's former testimony. Mercer cited three statements, and argued that each constituted inadmissible hearsay and should not be admitted. We disagree.

 Hearsay is an assertion of fact or belief made out of court and offered to prove the truth of the matter asserted. *See Laumer v. United States,* 409 A.2d 190, 194 (D.C.1979) (en banc). The first statement pertained to Motley's observations regarding a gun which Omar Johnson brought into her apartment. Mercer argues that Motley's observations on this point constituted hearsay because Motley had no first-hand knowledge regarding the gun.

When asked at the first trial if she knew "whether or not [Omar Johnson] had a gun on him," Motley responded that she knew that he did because Johnson asked Motley if he "could put it up while I take loose his hair" and that Mercer then put his gun "in the middle room" in her apartment. The trial judge found that "it appears that [Motley] has first-hand information about what she observed and the testimony will

---

10. At the second trial, Terrell stated that Gibson joined the men in his car as they left the scene of the murder. Mercer argues that this statement contradicts Gibson testimony where he stated that he was inside the apartment at the time of the murder.

11. Under the "double hearsay" doctrine, any statements admitted as admissible hearsay under one hearsay exception (in this case the former testimony exception of D.C.Code § 14–303) must also satisfy requirements of any applicable hearsay exceptions.

be allowed." We conclude that the record clearly demonstrates that Motley was able to offer first-hand observations regarding the gun, and therefore, the trial court did not commit error in finding that her statements were not hearsay.

■■■■■ Mercer also contends that Motley's statement that Gibson had said to her, "Robin tell [Omar Johnson] that [Mercer] wants him," should not have been admitted because it is inadmissible hearsay. The trial judge admitted this statement subject to a limiting instruction that it was not offered for the truth of the matter asserted (that · Gibson made the particular statement to Motley), but rather to show why Johnson went outside (presumably because Gibson asked him to come out). "If a statement is not offered to prove the truth of the matter asserted it is not hearsay." *Burgess v. United States,* 786 A.2d 561, 570 (D.C.2001) (citing *Perritt v. United States,* 640 A.2d 702, 704 (D.C. 1994)). We presume that the jury will follow limiting instructions given by the court. *See Weeda v. District of Columbia,* 521 A.2d 1156, 1163 (D.C.1987). The jury was instructed that the statement could only be considered to show why Johnson had gone outside. Accordingly, we conclude that the trial court did not err in admitting this statement.

■■■■■ Mercer also argues that the trial court improperly admitted Motley's testimony where she asserted that Johnson told her that he was going to get something out of one of the rooms in her apartment. The trial court found that this was a statement reflecting Johnson's then present state of mind, and admitted the testimony pursuant to the hearsay exception for statements made reflecting present state of mind.

■■■■■ The statement reflected Gibson's intention to retrieve an object from Mot-

ley's home. He had not yet performed this act, so the statement constituted an assertion of his future intent, as opposed to an explanation of past actions. A "declarant's expression of intention to perform an ... act increases the likelihood that the declarant did so. Such expressions are admissible under the 'state of mind' exception to the hearsay rule." *McBride v. United States,* 441 A.2d 644, 651–52 (D.C. 1982) (citations omitted). Accordingly, we likewise conclude that the trial court did not err in admitting this statement as a statement of present state of mind.

### III.

Mercer also argues that the trial court committed error in denying, without a hearing, his motion for a new trial pursuant to D.C.Code § 23–110. In the motion, Mercer argued that his lawyer was ineffective because he did not investigate the case and present a reasonable defense; did not call certain witnesses; and did not share certain discovery materials with Mercer. We conclude that Mercer's arguments are without merit.

■■■■■ Our review of a trial court's determination of whether counsel was ineffective presents a mixed question of law and fact; we will accept the trial judge's factual findings unless they lack evidentiary support in the record, and on those facts we will conduct a *de novo* review of the trial court's legal conclusions. *See Byrd v. United States,* 614 A.2d 25, 30 (D.C.1992); *Frederick v. United States,* 741 A.2d 427 (D.C.1999). *See also* D.C.Code § 17–305; Super Ct. Civ. R. 52(a).

■■■■■ In order to prevail on a § 23–110 motion alleging ineffective assistance of counsel, a movant must demonstrate that trial counsel's performance was deficient and prejudicial. *Byrd,* 614 A.2d at 29. Furthermore, such review will not proceed in a fashion so as to effectively second-guess strategic decisions made by

trial counsel. *Id.*; *Woodard v. United States,* 738 A.2d 254, 257 (D.C.1999).

■ Mercer argues that his attorney did not prepare for the second trial but rather assumed that the second trial would be a "mirror image" of the first trial. The record does not support that claim. While the evidence at the second trial was substantially similar to the evidence at the first trial, the one major difference was that Mercer's co-defendant in the first trial, Melvin Terrell, testified at the second trial. The record is clear, however, that Mercer's counsel was prepared for Terrell's testimony.

For example, the record indicates that Mercer's counsel familiarized himself with the details of Terrell's arrangement with the government in exchange for his testimony at the trial and that he cross-examined Terrell on this arrangement in order to discredit his testimony. Furthermore, during trial Mercer's counsel argued that certain statements made by Terrell at the second trial conflicted with statements he had previously made to the police. Accordingly, the trial court was not in error in denying Mercer's motion based on his counsel's asserted unpreparedness and failure to present a reasonable defense.

■ Mercer's other arguments alleging ineffectiveness are also without merit. He cites his counsel's failure to share certain discovery documents with him, but does not specifically identify which documents he is talking about.[12] This argument is too vague to have any merit. He also cites his counsel's failure to call a certain alibi witness, Ms. Ferrell, who based on her first trial testimony would have stated she heard "popping sounds" which may have come from the television. Even if we assume that Ms.

Ferrell would have testified consistent with her testimony at the first trial, her alternative explanation of the source of the gunshots does very little to rebut the statements of numerous witnesses who testified that they observed "live" gunshots in front of the apartment building. Accordingly, we conclude that Mercer did not suffer any prejudice by his attorney's decision not to call Ms. Ferrell.

■ Finally, Mercer argues that the trial court committed error by denying his § 23–110 motion without a hearing. While we have held that there is a presumption in favor of holding a hearing on § 23–110 motions alleging ineffective assistance of counsel when the motion pertains to matters outside the record, *see Spencer v. United States,* 748 A.2d 940, 948–49 (D.C. 2000), we have also held that a hearing is not required where certain claims are asserted, including those that assert "vague and conclusory allegations." *Ready v. United States,* 620 A.2d 233, 234 (D.C. 1993). We have also held that a hearing may not be required when the § 23–110 motion can be resolved on the basis of the available record.

As we have discussed above, Mercer's claims either fit in the category of "vague and conclusory" (the claim that his attorney failed to show him certain undisclosed documents), or can be resolved on the available record (the claim that his attorney was unprepared for Melvin Terrell). Accordingly, we conclude that the trial court did not commit error in deciding the motion without a hearing.

*Affirmed.*

---

**12.** Mercer's release status at the time of the second trial was community supervision. Mercer appeared at the first two days of the trial but voluntarily absented himself for the remaining four days of trial.