**Damion M. JONES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 08–CM–1409.**

District of Columbia Court of Appeals.

Submitted Oct. 12, 2010.

Decided April 21, 2011.

---

5. Plater, of course, was available for cross-examination at trial.

James Klein, Corinne Beckwith and Richard Greenlee, Public Defender Service, were on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III and L. Jackson Thomas II, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ, KRAMER, and OBERLY, Associate Judges.

RUIZ, Associate Judge:

Appellant, Damion M. Jones, appeals his conviction in Superior Court on one count of possession of phencyclidine (PCP). On appeal, he contends that the trial court erred in admitting prejudicial hearsay statements and in allowing the government to mischaracterize the evidence during its closing statement. We conclude that the trial court erred in admitting hearsay evidence, and that the error was not harmless; therefore, we reverse and remand for a new trial.

## I. Facts

Appellant was charged by information with "unlawfully, knowingly, and intentionally posess[ing] a quantity of phencyclidine, that is, PCP, a controlled substance," in violation of D.C.Code § 48–804.01(d) (2001). Appellant moved to suppress the PCP-laced cigarette that the government proposed to present at trial as proof that he possessed PCP.

At the suppression hearing, Metropolitan Police Department (MPD) Sergeant Anthony Guice testified that on January 11, 2008, he and Officer Charles Viggiani were canvassing the area for a burglary suspect when they came upon appellant and two other men standing in the mouth of an alley near 1736 Independence Avenue, Southeast. The men were oriented such that one man faced the officers approaching down the alley, while appellant and the third man had their backs to them. As the officers drew near, "there was a pause" in the men's conversation, and Sergeant Guice noticed appellant's hand "come down to his side and an object fall to the ground." As the officers came closer, within about five feet of the men, Ser-

geant Guice detected the odor of PCP.[1] He and Officer Viggiani then stopped the three men and ordered them to place their hands against a nearby fence. Sergeant Guice asked the man beside appellant to move his foot because "that was approximately where [he] had seen the object fall." Underneath the man's foot, Sergeant Guice discovered a cigarette saturated with a chemical substance that was later shown to be PCP.

The trial court denied appellant's motion to suppress, and the parties agreed to incorporate the evidence presented at the suppression hearing into the bench trial.[2] At trial, the government called Officer Viggiani, who testified about the events that led to appellant's arrest. Officer Viggiani testified that as he and Sergeant Guice approached the three men, he was conversing with Sergeant Guice when he noticed Sergeant Guice get "a serious look on his face," "like something was up." When they were about three feet away from the men, Officer Viggiani "began to smell a strong chemical odor" that he recognized to be PCP.[3] Officer Viggiani testified that Sergeant Guice ordered the men to move against the fence, recovered the cigarette, handed it to Officer Viggiani, and remarked "This guy is locked up." Over a defense objection, Officer Viggiani testified that Sergeant Guice told him that he had observed appellant "drop a cigarette to the ground with his right hand." Officer Viggiani acknowledged that he never saw appellant drop any object.

The trial court found appellant guilty of possessing a PCP-laced cigarette. It sentenced appellant to 180 days incarceration, to run consecutively with any other sentences appellant may serve on other charges. Appellant filed this timely appeal on October 28, 2008.

## II. Hearsay Testimony

■ Appellant contends that the trial court erred in admitting the hearsay statement made by Sergeant Guice to Officer Viggiani, that he observed appellant drop a cigarette to the ground as they approached the men in the alley. The government responds that Officer Viggiani's testimony was admissible because the statement was not hearsay and that, in any event, its admission into evidence did not prejudice appellant.

■ We review the trial court's decision to admit or exclude evidence for abuse of discretion. *See Goines v. United States,* 905 A.2d 795, 799 (D.C.2006). However, because "the exercise of that discretion must be founded upon correct legal principles," "it is an abuse of discretion if the trial judge rests his or her conclusions on incorrect legal standards." *Blackson v. United States,* 979 A.2d 1, 6 (D.C.2009) (internal quotations and alterations omitted). Moreover, whether a statement satisfies a particular hearsay exception is a legal question that we review *de novo. Id.* We apply the *Kotteakos* harmless error standard in evaluating the impact of an erroneously admitted hearsay statement. *See Odemns v. United States,* 901 A.2d 770, 781 (D.C.2006); *see also Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

1. Sergeant Guice recognized the odor of PCP from his experience on a vice unit and from two drug identification classes.

2. A second witness, Kimberly Ellington, an investigator for the Public Defender Service, also testified at the suppression hearing. Her testimony concentrated on the lighting and weather conditions in the alley on January 11, 2008.

3. Officer Viggiani was familiar with the odor of PCP from exposure to it in the field on four or five occasions.

■ Hearsay is an out-of-court assertion of fact offered into evidence to prove the truth of the matter asserted. *See Mercer v. United States,* 864 A.2d 110, 117 (D.C.2004). Generally, hearsay evidence is inadmissible at trial because

> [o]ut-of-court statements ... lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

*Laumer v. United States,* 409 A.2d 190, 194 (D.C.1979) (quoting *Chambers v. Mississippi,* 410 U.S. 284, 298, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). Statements that are not offered at trial to prove the truth of the matter asserted are not hearsay. *See Mercer,* 864 A.2d at 118. Falling within this category are statements offered under the "state of mind" exception to the hearsay rule. This exception "permits the use of hearsay statements for the limited purpose of showing the state of mind of the declarant" if the declarant's state of mind is at issue in the trial. *Evans–Reid v. District of Columbia,* 930 A.2d 930, 944 (D.C.2007); *see also Blackson,* 979 A.2d at 9 ("[T]he state of mind exception to the hearsay rule allows the admission of extrajudicial statements to show the state of mind of the declarant ... if that is at issue in the case." (quotation omitted)). The factfinder is not permitted, however, to consider these statements for their truth. *See Evans–Reid,* 930 A.2d at 944.

At trial, the prosecutor asked Officer Viggiani a series of questions about the events that led to appellant's arrest. One question focused on the actions of Sergeant Guice in stopping appellant and the two other men:

**PROSECUTOR:** Okay. Now as you— as you approached the individuals, the three individuals, you stated that the Sergeant—the Sergeant went up and asked them to step against the fence. Why did he do that?

**OFFICER VIGGIANI:** He informed me that he saw the defendant—

**DEFENSE COUNSEL:** Objection.

**THE COURT:** Overruled.

**PROSECUTOR:** Continue please.

**OFFICER VIGGIANI:** At that very time I did not know what he had at that exact moment.

**PROSECUTOR:** No, can you continue with your statement?

**OFFICER VIGGIANI:** Sure. He said that he observed the defendant drop a cigarette to the ground with his right hand.

Appellant contends that the trial court erred by admitting this testimony over his hearsay objection. Appellee argues that the court did not err because the statement—"He said that he observed the defendant drop a cigarette to the ground with his right hand"—was offered to show Sergeant Guice's state of mind at the time of the arrest, and not to prove that appellant dropped the cigarette.

First, to determine the admissibility of the hearsay statement under the state of mind exception, we must consider whether Sergeant Guice's state of mind was at issue in this case. *See Blackson,* 979 A.2d at 9. In *Blackson,* we held that the trial court did not abuse its discretion in excluding two hearsay statements because the state of mind of the declarants (the driver and a passenger of the vehicle from which shots were fired) were not at issue in the trial. *Id.* at 10. There, "the only dispute in th[e] case was whether [the defendant] shot at the [decedent's car] in self-defense or retaliation." *Id.* at 9. We reasoned that

because it was undisputed that the defendant fired the shots, the case turned on his state of mind in doing so, and not on the state of mind of the driver or the other passenger of the car from which the defendant fired the weapon. *Id.* at 9–10. Because neither the driver's nor the other passenger's state of mind was relevant to that issue, we upheld the trial court's determination that their statements did not fit within the state of mind hearsay exception. *Id.* at 10.

Here, the government sought to prove at trial that appellant intentionally possessed—and then dropped when the officers neared—the cigarette soaked in PCP. Appellant's defense, conversely, focused on the possibility that appellant dropped an object that was not the cigarette, that it was the man under whose foot the cigarette was found who actually possessed the PCP, and that therefore appellant did not possess the PCP. The only contested material issue in the case was the possession of the PCP-laced cigarette, and, more specifically, whether appellant dropped that cigarette when the officers approached. Thus, although Sergeant Guice's ability to perceive the object as he approached appellant was certainly a factor in the trial court's analysis of whether appellant possessed the cigarette, it is not apparent that Sergeant Guice's *state of mind* was relevant to his observation. In other words, although *what* Sergeant Guice witnessed was clearly at issue here, *why* Sergeant Guice approached the three men and asked them to move against the fence was not a contested issue at trial, after the suppression motion was denied. As in *Blackson,* because the officer's state of mind was not relevant to the question of appellant's guilt, the state of mind exception to the hearsay rule does not apply to permit Officer Viggiani's testimony about what Sergeant Guice told him. *Id.*; *see Evans–Reid,* 930 A.2d at 944.

Further, it is evident from the record that the prosecutor, at least once, used Officer Viggiani's testimony for the truth of the matter asserted—that Sergeant Guice "observed [appellant] drop a cigarette to the ground." This was not accurate. During direct examination at the suppression hearing, Sergeant Guice stated that he "observed [appellant's] hand come down to his side and an object fall to the ground." On cross-examination, Sergeant Guice elaborated:

> **DEFENSE COUNSEL:** After you saw, you said you saw a cigarette fall to the ground, right?
>
> **SERGEANT GUICE:** An object.
>
> **DEFENSE COUNSEL:** An object? You weren't sure what it was.
>
> **SERGEANT GUICE:** Correct.

Yet, in closing argument at trial, when discussing the lighting conditions in the alley, the prosecutor incorrectly said that Sergeant Guice had seen appellant drop a "cigarette" (not merely an "object" as Guice, in fact, had testified at the suppression hearing) and treated Officer Viggiani's trial testimony about what Sergeant Guice had told him as fact: "Both officers testified that it was well-lit enough in the alley for the—for Officer Guise [*sic*] to observe [appellant] drop the cigarette to the ground, once he realized that officers were approaching." The prosecutor's characterization of the evidence in this manner undercuts its argument on appeal that the statement was not hearsay.

 Moreover, procedurally, the court erred in evaluating appellant's objection. "The law is clear that the [prosecutor] and the trial court, not the . . . appellant, had the legal responsibility to clarify the basis for admitting testimony, over objection, that otherwise was inadmissible hearsay." *In re Ty.B.,* 878 A.2d 1255, 1264–65 (D.C.2005) (quoting *Patton v.*

*United States*, 633 A.2d 800, 809 (D.C. 1993) (per curiam)). Thus, as we have stated,

> on proper objection it is clearly the burden of the party seeking its admission, to identify the appropriate exception and to demonstrate that the testimony fell within it. And it is the trial court's responsibility to examine the testimony and determine whether the proper foundation has been laid for the exercise of discretion as to its admission.

*Odemns*, 901 A.2d at 775–76 (quoting *Patton*, 633 A.2d at 809) (emphasis omitted). Here, however, appellant's objection was overruled without discussion or explanation as to why the court deemed the out of court statement admissible. Further, as in *Odemns*, "the government never identified a hearsay exception for the trial court to review." *Odemns*, 901 A.2d at 776 (quotation and alteration omitted). We, therefore, conclude that the trial court erred in summarily overruling appellant's objection and in allowing the hearsay statement to be admitted into evidence.

▮▮▮▮ Under the harmless error standard, reversal is not warranted if we determine, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos*, 328 U.S. at 765, 66 S.Ct. 1239. On the record before us, however, we simply cannot say with confidence that the court's judgment was not substantially swayed by the improperly admitted hearsay testimony. In making its findings, the court rather vaguely credited testimony that "[t]he man said he saw him drop it. He went to the spot where he dropped it, and when he went to that spot where he dropped it, this is what he got." The court subsequently concluded, "Officer told us what he saw that it was, and I don't have any reason to disbelieve him." Although it is not clear to which officer the court was referring, only Officer Viggiani testified about what "it" was—that is, that Sergeant Guice told him that the dropped item was a cigarette.[4] We can fairly conclude, therefore, that the court relied on Officer Viggiani's hearsay testimony about what Sergeant Guice told him in adducing appellant's guilt. Because this testimony never should have been admitted into evidence, the judgment undoubtedly was substantially swayed by the error and "it is impossible to conclude that substantial rights were not affected." *Kotteakos*, 328 U.S. at 765, 66 S.Ct. 1239. Accordingly, we must reverse the trial court's judgment.

The judgment of the Superior Court of the District of Columbia is hereby reversed and remanded for a new trial.[5]

*So ordered.*

▮▮▮▮▮▮▮

---

4. Sergeant Guice was emphatic that he saw an "object" drop from appellant's hand. Categorizing the dropped item as an unidentified "object," we think, is not quite telling the court "what . . . it was."

5. In light of our reversal based on the trial court's erroneous admission of, and reliance upon, hearsay evidence, we need not address appellant's argument that the trial court also failed to intervene *sua sponte* when the prosecutor misstated the evidence during closing arguments.