*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-FS-0588

IN RE M.W., APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(2022-DEL-000993)

(Hon. Robert A. Salerno, Trial Judge)

(Argued January 30, 2025                                    Decided May 7, 2026)

*Amy Phillips*, Public Defender Service, with whom *Samia Fam* and *Jaclyn Frankfurt*, Public Defender Service, were on the briefs, for appellant.

*Anne A. Deng*, Assistant Attorney General, for appellee the District of Columbia. *Brian L. Schwalb*, Attorney General, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Dia Rasinariu*, Assistant Attorney General, were on the briefs for appellee.

Before MCLEESE, DEAHL, and SHANKER, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant M.W., who is a juvenile, appeals from a judgment finding him responsible for attempted murder and related offenses. M.W. challenges the trial court's exclusion at trial of evidence of two hearsay statements. We affirm.

## I.  Factual and Procedural Background

### A.  The District's Evidence at Trial

The evidence at trial included the following.  M.W.'s mother, who was driving a gray Jeep, and Nira Monk, who was driving a dark blue Nissan, parked near each other in a parking lot outside of a store on Howard Road, S.E.  M.W. was a passenger in the car his mother was driving.  Ms. Monk was accompanied by her boyfriend, Bernard Boyd, and her children.   M.W.'s mother and Ms. Monk got into an argument.  M.W. and Mr. Boyd became involved in the argument.  According to Ms. Monk, M.W. was very combative.  Mr. Boyd believed that M.W. had a gun at the time of the argument because Mr. Boyd saw M.W. go to the car's trunk and fidget with his hand near his hip.  During the argument, Officer Shaun Freeman was standing a few feet away.

The groups eventually returned to their cars and left the parking lot.  M.W. rode in the passenger seat of the car his mother was driving.  Ms. Monk's car went out of the parking lot first and turned right onto Howard Road.  M.W.'s mother's car left the parking lot immediately after and turned left onto Howard Road.

At the time that the cars left the parking lot, the Metropolitan Police Department received a ShotSpotter alert for three shots at the store's location.

Surveillance videos depicting the argument and the cars leaving the store were introduced into evidence at trial.

The District of Columbia's theory of the case was that M.W. had shot at Ms. Monk's car from the passenger seat as the car his mother was driving left the parking lot. Ms. Monk testified that when she turned out of the parking lot, she immediately heard gun shots and saw the Jeep speed away in the opposite direction. Ms. Monk believed that she heard about five shots because she later found "about five" bullet holes in the back of her car. The bullet holes had not been there before the incident.

Mr. Boyd heard four to five gunshots immediately after Ms. Monk's car pulled out of the parking lot. He saw a muzzle flash coming from the passenger side of the Jeep and felt debris brush across his face. Once he got home after the incident, Mr. Boyd saw four bullet holes in the back of Ms. Monk's car.

About five to six minutes after the shooting, Officers Anthony Gramieri and Nesseem Mekhael arrived on the scene. The officers located three shell casings on Howard Road, to the left side of the exit from the store's parking lot.

Mr. Boyd and Ms. Monk did not report the incident to the police on the night it occurred, because Ms. Monk and her children were "shaken up." Ms. Monk reported the incident the following day.

Ms. Monk was impeached with prior convictions for conspiracy to commit second-degree arson, relating to a plan to set Ms. Monk's car on fire for insurance money; and second-degree fraud, for having written her name on someone else's check.

Mr. Boyd was impeached with several convictions for armed robbery, among other offenses. Mr. Boyd was also impeached on the ground that the absence of damage to the interior of the car was not consistent with his testimony that he felt debris hit his face.

## B. The Defense's Attempts to Admit Hearsay Statements

M.W.'s theory of the case was that someone in Ms. Monk's car fired the gunshots, and the bullet holes in Ms. Monk's car either preexisted or were later created with a purpose of committing insurance fraud. Defense counsel attempted to support that theory by introducing evidence of hearsay statements made by Arrington Archie, an uninvolved third party who was near the scene at the time of the incident. Video from Officer Mekhael's body-worn camera (BWC) shows that

about six minutes after the shooting, Officer Gramieri asked Mr. Archie if he heard anything. Mr. Archie responded that he was right in front of "it," that a car drove up the street, and that "it was the Black Nissan Altima."

Defense counsel subpoenaed Mr. Archie, but Mr. Archie initially did not appear at trial. At the start of trial, M.W.'s counsel moved to introduce the video of Mr. Archie's statement to Officer Gramieri as a present sense impression. After reviewing the BWC video, the trial court sustained the District's objection, explaining that the trial court could not tell who was talking, where the conversation was, or what the conversation was about.

The following day, defense counsel renewed the motion to admit the video, which the trial court again denied. Defense counsel then moved to admit the "statements from Mr. Archie" as excited utterances, proffering that in a portion of Officer Gramieri's BWC video that the trial court had not yet received, Officer Freeman stated that Mr. Archie came over to Officer Freeman and said that Mr. Archie also heard the shots and saw a black car shooting. According to defense counsel, in this portion of the video, Officer Freeman stated, "I heard gunshots, and then the gentleman over there [pointing in direction of the Eyewitness] came and told me [unintelligible] he saw a black car shooting at the ground." Defense counsel described this statement as "perhaps an even closer in time statement" and proposed

calling Officer Freeman as a witness. The trial court declined defense counsel's offer to send chambers the additional BWC video, stating, "It's not going to work, okay, because for all the reasons I said the last time. Number one, we don't know who this person is. We don't know where it is. We don't know when it is. We don't know anything about this declarant." After defense counsel offered to proffer additional facts relating to the additional BWC footage, the trial court stated that the trial court would need more than "simply the clip itself" to determine whether the video was admissible as either an excited utterance or a present sense impression.

Defense counsel then called Officer Gramieri to testify, to try to lay a foundation for the admission of the additional BWC video. Officer Gramieri testified that he spoke with Mr. Archie within the first few minutes of being on the scene, that he believed Mr. Archie was close by at the time of the incident, and that Officer Freeman had also told Officer Gramieri about an earlier conversation with Mr. Archie. According to Officer Gramieri, Mr. Archie seemed calm when speaking to Officer Gramieri.

After questioning Officer Gramieri, defense counsel renewed the request to admit "the eye witness'[s] statement" as an excited utterance. The trial court denied this motion, stating that there was nothing in the record from which the court could find the absence of reflection sufficient for admission as either a present sense

impression or an excited utterance. The trial court emphasized Officer Gramieri's testimony describing Mr. Archie's demeanor at the time of the statement to Officer Gramieri as calm.

Defense counsel filed a motion to reconsider the admissibility of "the proffered statements (both to Officer Gramieri and to Officer Freeman)" as an excited utterance. After Mr. Archie appeared in court pursuant to a material-witness warrant, defense counsel suggested that the motion to reconsider be tabled until after Mr. Archie's testimony. The trial court declined to table the motion to reconsider and instead denied the motion, "rul[ing] for the fourth time that it's inadmissible substantive evidence."

## C. The Defense Evidence at Trial

Mr. Archie testified that he saw a black Nissan driving very fast and heard a gunshot that landed about an inch from his foot as he crossed Howard Road. When asked whether he saw what direction the gunshots were coming from, Mr. Archie testified that he did not. Mr. Archie testified that he briefly spoke with Officer Freeman within "probably" two minutes of the incident. When defense counsel asked Mr. Archie if he saw the Nissan shooting at the ground, Mr. Archie said no and denied having told Officer Freeman otherwise.

Defense counsel then called Officer Freeman to impeach Mr. Archie's testimony. Officer Freeman testified that he was on duty at the store in question at the time of the incident. Mr. Archie told Officer Freeman that he saw a black car shooting at the ground. The trial court ruled that this testimony could be used solely to impeach Mr. Archie's testimony.

### D. Remand of the Record

M.W. argues on appeal that Mr. Archie's statements to Officers Freeman and Gramieri should have been admitted into evidence both as excited utterances and as present sense impressions. After oral argument, this court remanded the record for the trial court to further consider and explain its ruling that Mr. Archie's statement to Officer Freeman was not admissible as a present sense impression.

On remand, the trial court issued an order explaining its conclusion that Mr. Archie's statement to Officer Freeman was not admissible as a present sense impression. Specifically, the trial court acknowledged that although Mr. Archie testified at trial that his conversation with Officer Freeman occurred within "probably" two minutes of the shooting, it was possible that the conversation occurred sooner. The trial court noted, however, that M.W. bore the burden of establishing the admissibility of the evidence and concluded that M.W. had failed to

establish that the statements were "made at the time of the incident or immediately thereafter, such that they may be considered spontaneous."

This court directed supplemental briefing, and the case is now ripe for decision.

## II. Analysis

Hearsay evidence is generally inadmissible at trial, but there are exceptions to that general rule. *E.g.*, *Jones v. United States*, 17 A.3d 628, 632 (D.C. 2011). This case involves two of those exceptions: the present-sense-impression exception and the excited-utterance exception. We review for abuse of discretion a trial court's ruling as to whether a hearsay statement is admissible as a present sense impression or an excited utterance. *Sims v. United States*, 213 A.3d 1260, 1266 (D.C. 2019) (present sense impression); *Mayhand v. United States*, 127 A.3d 1198, 1205 (D.C. 2015) (excited utterance). More specifically, we review the trial court's factual determinations for clear error, pure determinations of law de novo, and application of law to facts with deference. *Mayhand*, 127 A.3d at 1205. We hold that the trial court did not abuse its discretion in excluding the statements at issue in this case.

## A.  Present Sense Impression

To be admissible as a present sense impression, a statement must "describ[e] or explain[] events which the declarant is observing at the time [the declarant] makes the declaration or immediately thereafter."  *Hallums v. United States*, 841 A.2d 1270, 1276 (D.C. 2004).  The trial court must be assured, by a preponderance of the evidence, that (1) the declarant personally perceived the event being described, (2) the declarant made the statement contemporaneously, and (3) the statement was made in circumstances that were "truly spontaneous," rather than "involv[ing] conscious reflection, recall from memory, or even intentional deception."  *Sims*, 213 A.3d at 1266-67 (citation modified).

### 1.  Statement to Officer Freeman

In ruling that Mr. Archie's statement to Officer Freeman was not admissible as a present sense impression, the trial court did not express concern as to the requirement that the declarant have personally observed the event being described. Rather, the trial court expressed concerns about (1) the passage of approximately two minutes between the event and Mr. Archie's statement; and (2) whether Mr. Archie's statement was made spontaneously.  We hold that the trial court reasonably viewed those concerns as warranting exclusion of Mr. Archie's statement to Officer Freeman.

Although the word "present" in the title of the exception seems to imply that present sense impressions would be limited to statements that describe what the declarant is perceiving at the precise moment the statement is made, we (like other courts) have not interpreted the exception so narrowly. *See, e.g.*, *Hallums*, 841 A.2d at 1276 (present-sense-impression exception can apply to statements about what declarant is perceiving that are made either "at the time" or "immediately thereafter"). We take as a given for current purposes that the passage of approximately two minutes between the shooting and Mr. Archie's statement was not by itself fatal to the admissibility of the statement as a present sense impression. The passage of such a period of time, however, certainly opens up the possibility that Mr. Archie's statement was not "truly spontaneous" but instead was the product of "conscious reflection [or] recall from memory." *Sims*, 213 A.3d at 1266 (citation modified).

In the present case, M.W. provided little other information about the circumstances of Mr. Archie's conversation with Officer Freeman. Mr. Archie testified at trial that he spoke with Officer Freeman for about thirty seconds, and that the "conversation consiste[d] of" him asking if the officer had heard "that," and the officer saying, "yes." Officer Freeman testified at trial that Mr. Archie described seeing a black car shooting at the ground. M.W. did not proffer or present any other information about circumstances that would have gone to whether Mr. Archie's

statement was "truly spontaneous," such as whether Mr. Archie's statement was volunteered or instead was prompted by a question from Officer Freeman and what Mr. Archie's demeanor was like at the time the statement was made. *See generally, e.g.*, *United States v. Boyce*, 742 F.3d 792, 797-98 (7th Cir. 2014) (explaining that "answering questions rather than giving a spontaneous narration could increase the chances that the statements were made with calculated narration").

The lack of any additional information, other than the brief period of time involved, going to whether Mr. Archie's statement was spontaneous is notable, because M.W. had multiple opportunities to provide such additional information: when examining Mr. Archie at trial, when eliciting testimony from Officer Freeman at trial, and when proffering information to the trial court on remand.

We hold that the trial court acted within its discretion in declining to admit Mr. Archie's statement to Officer Freeman as a present sense impression given the passage of time between the shooting and the statement and the absence of any other information shedding light on whether Mr. Archie's statement was spontaneous. *Cf. State v. Dessinger*, 958 N.W.2d 590, 601 (Iowa 2021) (holding that child's nonverbal demonstration made several minutes after event was not present sense impression because child "was describing past events at the request of a third party. There was nothing spontaneous about it."). M.W. bore the burden of establishing

the admissibility of the statement, and we hold that the trial court reasonably concluded that M.W. did not carry that burden.

We are not persuaded by M.W.'s arguments to the contrary. First, M.W. argues that the trial court committed a clear error of fact on remand in finding that Mr. Archie's statement to Officer Freeman was made "approximately two minutes" after the shooting. In support of that argument, M.W. relies on (1) Mr. Archie's trial testimony that Mr. Archie spoke with Officer Freeman within "probably" two minutes of the shooting; and (2) evidence that M.W. proffered on remand in support of the possibility that the conversation could have taken place less than two minutes after the shooting. We see no clear error. Although the trial court could have relied on the evidence proffered by M.W. on remand to infer that the statement was made less than two minutes after the shooting, the trial court was not compelled to draw that inference. We hold that the trial court reasonably found that Mr. Archie's statement to Officer Freeman was made approximately two minutes after the shooting.

Second, M.W. argues that the exception for present sense impressions has only two requirements—personal knowledge and contemporaneity—not three. We disagree. This court's cases have repeatedly identified spontaneity as a distinct component of the test for admission of present sense impressions. *See, e.g., Sims,*

213 A.3d at 1266-67 (to qualify as present sense impression, statement must reflect contemporaneity, spontaneity, and personal knowledge); *Mayhand*, 127 A.3d at 1209 n.13 ("Both the hearsay exception for present sense impressions and excited utterances require a showing of spontaneity . . . ."); *Gardner v. United States*, 898 A.2d 367, 374 (D.C. 2006) ("Statements sought to be admitted under the present sense impression exception to this general rule must have been made spontaneously and contemporaneously with the events described.") (citation modified); *Hallums*, 841 A.2d at 1277 ("In recognizing a hearsay exception for present sense impressions, however, we note that care must be taken to ensure that this exception is not used to admit statements that circumstances reveal were not truly spontaneous, but instead involved conscious reflection or recall from memory.").

Third, M.W. argues that the trial court erroneously treated the passage of time between the shooting and Mr. Archie's statement to Officer Freeman as dispositive. We do not read the trial court's ruling that way. Although the trial court did place substantial emphasis on the passage of time, the trial court also noted the requirement of spontaneity and pointed out that M.W. had the burden of establishing admissibility.

Fourth, M.W. relies on this court's decision in *Smith v. United States*, 26 A.3d 248 (D.C. 2011), which M.W. describes as having held that a statement was

admissible as a present sense impression. To the contrary, we held in *Smith* only that "the trial court should have attempted to determine whether [the statement] was admissible as a present sense impression." *Id.* at 260.

Finally, M.W. relies on decisions from other jurisdictions either admitting or upholding the admission of statements as present sense impressions in circumstances that M.W. argues are comparable to those of the present case. It is true that some of the cases cited by M.W. admitted or upheld the admission of statements as present sense impressions in circumstances comparable to the circumstances of this case. Those cases, however, are not binding on this court. Moreover, the question for this court is not whether the trial court could permissibly have exercised its discretion to admit Mr. Archie's statement to Officer Freeman as a present sense impression. Rather, the question is whether the trial court abused its discretion in declining to admit the statement on that ground. "Appellate decisions upholding a given exercise of discretion do not necessarily establish that a different exercise of discretion would be impermissible." *Workman v. United States*, 255 A.3d 971, 978 (D.C. 2021).

## 2. Statement to Officer Gramieri

M.W. also argues that the trial court erred in not admitting Mr. Archie's subsequent statement to Officer Gramieri as a present sense impression. We conclude to the contrary.

Mr. Archie's statement to Officer Gramieri was made about six minutes after the shooting and was in response to a question. The grounds for admitting the statement as a present sense impression thus are weaker than the grounds for admitting Mr. Archie's statement to Officer Freeman. It follows that the trial court also did not err in concluding that Mr. Archie's statement to Officer Gramieri was not admissible as a present sense impression.

## B. Excited Utterance

For a statement to be admissible as an excited utterance, the party seeking admission of the statement must show:

> (1) the presence of a serious occurrence which causes a state of nervous excitement or physical shock in the declarant, (2) a declaration made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated or constructed it, and (3) the presence of circumstances [that] in their totality suggest spontaneity and sincerity of the remark.

*Mayhand*, 127 A.3d at 1205 (citation modified).

## 1. Statement to Officer Freeman

As already noted, the record contains very little information about the circumstances of Mr. Archie's statement to Officer Freeman. *See supra* at 12. The statement was given within approximately two minutes of the shooting, and there

was evidence suggesting that the statement was made during a brief conversation and was in response to a question. *Id.* We have no information about whether the incident actually put Mr. Archie into a state of "nervous excitement or physical shock," what Mr. Archie's demeanor was during the statement, whether the statement appeared to be "premeditated or constructed," or whether there were any other circumstances suggesting "spontaneity and sincerity" of the statement. *Mayhand*, 127 A.3d at 1205 (citation modified). We conclude that the trial court acted well within its authority to determine that M.W. had not carried the burden of establishing that the statement qualified as an excited utterance. The absence of evidence about Mr. Archie's mental state at the time of the statement by itself warranted exclusion of the statement. *See, e.g.*, *Mayhand*, 127 A.3d at 1206-08 (reversing trial court's admission of statement as excited utterance because, among other things, there was no evidence that declarant was "actually distraught, in shock, or in a state of nervous excitement at the time" of statement, and statement therefore did not satisfy first requirement of excited-utterance exception) (citation modified).

We are not persuaded by M.W.'s arguments to the contrary. First, M.W. argues that the trial court should have considered the BWC footage of Mr. Archie's later statement to Officer Gramieri when deciding on the admissibility of the statement to Officer Freeman. As previously noted, *supra* at 5-8, the trial court ruled on the request to admit the statements at issue multiple times. It thus is not entirely

clear what the trial court ended up considering on the issue. In any event, we have reviewed the BWC footage, and we conclude that it supports rather than contradicts Officer Gramieri's testimony that Mr. Archie seemed calm when he made the statement to Officer Gramieri. *See generally, e.g.*, *Gabramadhin v. United States*, 137 A.3d 178, 183-84 (D.C. 2016) (notwithstanding obligation to defer to trial court, court of appeals concluded after listening to recording of 911 call that tone and contents of call were "not consistent with a determination that [the declarant] was so upset that she was unable to reflect or was speaking reflexively"). We think it clear that consideration of the BWC footage would have only provided further support for the trial court's ruling.

Second, M.W. notes that at one point the trial court declined M.W.'s offer to make a proffer. It is unclear whether that proffer related to Mr. Archie's statement to Officer Freeman or to Mr. Archie's statement to Officer Gramieri. In any event, although we do not approve of the trial court's refusal at that moment to hear a proffer, we note that M.W. had many opportunities thereafter during the trial to make clear what M.W. wished to proffer. Moreover, M.W. (1) subsequently called Mr. Archie and Officer Freeman as witnesses; and (2) made a proffer to the trial court on remand based on an interview with Mr. Archie. At no point has M.W. concretely explained what he hoped to proffer at trial but was unable to present that would have

meaningfully supported a conclusion that Mr. Archie's statement was admissible as an excited utterance.

## 2. Statement to Officer Gramieri

We uphold the trial court's ruling that Mr. Archie's statement to Officer Gramieri was not admissible as an excited utterance for essentially the same reasons we have upheld the trial court's similar ruling as Mr. Archie's statement to Officer Freeman. The statement to Officer Gramieri was further removed in time from the shooting, and there was direct evidence that Mr. Archie was calm when that statement was made. We see no basis upon which the trial court could properly have admitted that statement as an excited utterance.

For the foregoing reasons, we affirm the judgment of the Superior Court.

*So ordered.*